### WILLIAM WELLER *vs.* H. WELLER and others.

A testator, by his will, which took effect prior to the revised statutes, devised as follows: "I give and devise to my two sons, Moses and Abraham, the farm I live upon, to have and to hold to them, their heirs and assigns for ever, they supporting their mother thereon as above directed, and paying my just debts and funeral expenses, to be divided as equal as may be, share and share alike. If either Moses or Abraham should die and leave no lawful issue, then their portion or share of the land shall be equally divided between my son William and the survivor of them." Moses died in 1850, leaving one child, and Abraham died in 1857, leaving a widow, but no issue.

---

Weller *v.* Weller.

---

*Held* that the limitation over to William was good as an executory devise; that he was entitled to an estate in fee in the one half of the lands devised to Abraham, exonerated from the dower of A.'s widow; and that the remaining half of such lands descended to the heirs at law of Abraham, subject to the dower of his widow.

ACTION for a partition. The rights and interests of the several parties depended upon the construction of the will of H. Weller, deceased.

*Thomas McKissock,* for the plaintiff.

*E. A. Brewster,* for the defendant H. Weller.

*C. H. Winfield,* for the defendant Catharine Weller.

BROWN, J. This is an action for the partition of certain lands in the county of Orange, and the two questions which I am to determine arise upon the construction of the will of Hieronimous Weller, deceased, the ancestor of the parties. The will bears date December 23, 1808, and was proved May 29, 1810. The clause of the instrument upon which the questions arise is in the following words: "I give and devise to my two sons, Moses and Abraham, the farm I live upon, to have and to hold to them, their heirs and assigns for ever, they supporting their mother thereon as above directed, and paying my just debts and funeral expenses, to be divided as equal as may be, share and share alike. If either Moses or Abraham should die and leave no lawful issue, then their portion or share of the land shall be equally divided between my son William and the survivor of them." Moses died in the year 1850, leaving one heir, an only child. Abraham also died in the year 1857, leaving a widow, the defendant Catharine, and no children or other descendants.

Upon these facts, which appear upon the face of the pleadings, I am of opinion that the limitation over is good as an executory devise. It is not open to the objection that the

estate of William and the survivor of the two brothers, Moses and Abraham, is to take effect upon an indefinite failure of issue. The provision which limits a part of the estate to the survivor of the two is sufficient to rescue the limitation from the consequences which would otherwise ensue; because it shows that the testator intended issue living at the time of the death of the first taker. Nor is it an objection that there is no survivor to take the share not given to William. This provision of the will, which cannot be executed for lack of a survivor, may fail without impairing or destroying the other part of the limitation, unless the existence of a survivor is to be deemed a part of the contingency upon which the limitation over is to take effect; which I will notice hereafter. When a part is susceptible of execution and a part is not, that part which may be executed shall have effect, provided it can be separated from the other part.

It is contended that the limitation over is void, because at the time of the death of the first taker, who died without issue, there was no survivor, Moses having died before that time, leaving issue. Or, in other words, because there is no survivor to share the estate with William, the limitation over must fail. There are two objections to this proposition. First. The limitation over of the one half of the share to William was good as an executory devise, at the time of the death of the testator, or it was not. If it was a valid limitation (as I think it was) it cannot be less than valid now, because there is no person in being answering the description of the survivor to take the other part. Second. The proposition implies that the limitation over of the one half to William is upon condition that there shall be a survivor of the brothers Moses and Abraham in being at the time of the dying without lawful issue to take the other half. Now, the word survivor is employed to designate one of the persons who is to take under the limitation, and not to prescribe a condition upon which William's right to take shall depend. If either Moses or Abraham should die without lawful issue, then the one half of the lands

given to the person so dying should go over to William. The word either is a distributive pronoun, signifying one of the first takers, and William's right to the estate depends upon no other contingency than the dying without lawful issue.

The argument assumes a different form when it is said that the limitation over must have effect whenever one of the two brothers, Moses and Abraham, should die, because otherwise there would be no survivor. In other words, by naming the survivor as one of the persons to take by force of the words of limitation, the testator intended that these words should have effect only in the event that the brother who first died should die without lawful issue. This construction concedes it to have been the testator's intention that if Abraham had died first, (as he died without issue,) William should take one half of the lands given to him, and that if Moses had died without lawful issue, William would also have taken one half of the lands given to him. And it goes very far, I think, to show an intention predominant in the testator's mind that William should have a portion of the lands upon the sole contingency of one of his brothers dying without lawful issue. The testator doubtless had in his mind the survivor of the two brothers to take the half of the deceased's share, should the contingency happen; because he so expresses himself in his will. But I think the expression is by no means to be regarded as indicating an intention that the limitation over must have effect whenever one of the first takers died, and not afterwards when the other died. If either Moses or Abraham should die without lawful issue—without saying at what time or in what order, or that the brother so dying should leave the other brother his survivor—then the estate of the brother so dying should go over, the one half to William and the other half to the survivor. This word survivor does not create a condition that there shall be a survivor in order to give the limitation effect, but its office is to denote one of the persons who is to take under it. To say that because the brother who died first left lawful issue the entire estate vested absolutely

in both the first takers, is to interpolate a new condition, not expressed in the will nor implied from its language, and one which the testator could not have contemplated.

The more difficult—and I may add really doubtful—question arises upon the right of Catharine, the widow of Abraham, to dower in the whole of the lands devised to him. If the estate vested absolutely in her husband upon the death of Moses before him, leaving lawful issue, then of course her right to dower is unquestionable. But assuming that the limitation over to William is valid, and that he is entitled to the half of her husband's interest, is she then entitled to her dower in the portion which thus vests in William? To entitle a widow to her dower the husband must have been seised of a freehold in possession, and also of an estate of inheritance in reversion or remainder. The freehold and inheritance must unite in the husband *simul et semel* during the marriage. It must have been such an estate that the issue of the wife might by possibility have inherited. These are the definitions furnished by the elementary writers; but it will be observed that the requisites named relate to the quality and not to the quantity of the estate. And according to Mr. Park, wherever they are mentioned in the books, it is to introduce the inquiry whether the quality of the wife's estate was such that her issue might have inherited, but never with a view to show that the quantity of the estate was such that it might endure so long as to be inheritable by her issue. The widow takes her estate through the husband, but not from him like one who inherits, for he can do no act which will divest her right. And when the estate of the husband is determined by the happening of an event which defeats its further continuance, the estate in dower must be determined with it. It is a part of the same estate of freehold and inheritance of which the husband was seised, and to the extent of it so much abstracted from what would otherwise descend to the heirs at law. Abraham Weller, by the express words of the will, took an estate in fee, but by subsequent words, which I think operative and effectual, it

was made determinable upon his dying without issue living at the time of his death. When that event happened, the wife's right to dower ceased with the estate out of which it could only proceed. This conclusion conflicts with Lord Mansfield's judgment in the case of *Buckworth* v. *Thirkel*, (3 *Bos. & Pul.* 652.) It is the rule, however, given by Mr. Cruise in his treatise on the law of real property, (*tit.* 6, *Dower, ch.* 3, § 33,) and is the rule maintained by Mr. Park with singular ability in his work on the law of dower, page 174, to be found in the 11th volume of the *Law Library.*

I am therefore brought to determine that William Weller, the plaintiff, is entitled to an estate in fee in the one half of the lands devised to Abraham, exonerated from the dower of his widow Catharine. And the remaining half of such lands (there being no survivor of the two first takers) descends to the heirs at law of Abraham, subject to the dower of his widow Catharine.

The plaintiff will take the usual order of reference.

[ORANGE SPECIAL TERM, December 6, 1858. *Brown*, Justice.]