JACOB HATFIELD, Respondent, *v.* SAMUEL SNEDEN, Appellant.

The common-law rights of a husband as tenant by the curtesy are not affected by the acts of 1848 (chap. 200, Laws of 1848) and 1849 (chap. 375, Laws of 1849), for the more effectual protection of the property of married women, as to the real estate of the wife undisposed of at her death.

Where the wife takes by devise an estate in fee, limited by an executory devise which defeats or abridges the fee in case of the happening of a certain event, the seizin and estate which she has will give the husband curtesy.

The husband's estate is not derived merely out of the estate of the wife, but is created by law, and is tacitly annexed to the gift, and so continues as an incident of the éstate created, notwithstanding the termination thereof by the happening of the specified event.

M., by her will made in 1851, devised certain real estate to her daughter E., her heirs and assigns forever, providing that her son I., who had been absent three years, and was supposed to be lost at sea, should not return ; in case he should be living and returned, then he and E. to share equally; and if E. " should never have any children or child living at her decease," then the real estate was devised to plaintiff. M. died in 1854; E. married the defendant in 1858, and died in 1861, leaving no child surviving. One child of the marriage was born, but died prior to the mother. In an action to recover possession of the real estate, *held*, that E. took a fee determinable upon the happening of the specified events, *i. e.*, the non-return of I., and her death without a child surviving ; that the limitation over was good as an executory devise, and there was no valid objection thereto, on the ground of remoteness, nor was there any question but that both the events upon which the executory devise was to take effect had been determined in his favor, as there was such a presumption of the death of I., that his return might be taken to have become impossible before the death of E.; but that defendant had an estate in the land as tenant by the curtesy, and that plaintiff, therefore, was not entitled to recover.

(Reargued March 19, 1873; decided June term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial district, in favor of defendant, entered upon an order denying a motion and directing judgment on a verdict. (Reported below, 42 Barb., 615.)

This was an action of ejectment to recover possession of certain premises situate in the towns of Castleton and Northfield, Staten Island. Both parties claimed under Mary Wood. She died in January, 1854, seized of the premises in question, and leaving a last will and testament dated October 17, 1851, of which will the following are the provisions in question:

"First. After all my just and lawful debts are paid and discharged, I give, devise and bequeath to my beloved daughter, Elizabeth Ann Wood, all of my real estate that lays in the town of Northfield and in the town of Castleton, with all my personal property of every description, for her to have, her heirs and assigns, forever; providing that my son, Isaac Bogett, should not return to the said county, who has been gone three years or more, and it is supposed that he is lost at sea, but if it should be otherwise, and .my son Isaac should be living and return to the said county, it is my will for my said son and daughter above named to have and share equally and alike in my real and personal estate before mentioned, after my just debts are paid as aforesaid; and I do herein direct, if my said daughter Elizabeth Ann should never have any children, or a child living at her decease, it is my will herein also to direct, if my son should not return, I give and bequeath all my real estate to Jacob Hatfield, for him to have and to hold, his heirs and assigns, forever."

Elizabeth Ann, the daughter named in the will, entered into possession of said premises, and retained the same, claiming ownership up to her death. She intermarried with the defendant, on or about the 25th day of August, 1858, and died on the 12th of March, 1861, leaving no children her surviving. During her coverture, and on the 2d day of March, 1861, she had a child of said marriage, which died before her on the 9th day of March, 1861. That said Elizabeth Ann Sneden left a will, in and by which she devised all her real estate to defendant. Upon these facts the court directed a verdict for defendant, and directed exceptions to be heard at first instance at General Term.

*Samuel Hand* for the appellant. Plaintiff has no estate under the will of Mary Wood; the limitation over to him is too remote and uncertain. (Jarman on Wills, 444, 783; *Areson* v. *Areson*, 3 Den., 458; *Sherry* v. *Losier*, 1 Bradf., 437, 450; *Church in Brattle Square* v. *Grant*, 3 Gray, 156, 157; *Jackson* v. *Noble*, 2 Keen, 590.) Defendant is entitled to possession for life as tenant by the curtesy. (*Buckworth* v. *Thirkell*, 3 Bos. & P., 652; S. C., note *a*, 4 Kent Com., 27–32, 33, 128, 264; 1 Hill on R. P., 80; *Church* v. *Grant*, 3 Gray, 156, 157; Roper in 2 Bright's Hus. and Wife, 462, approved; *Payne's Case*, 8, 60, 67; 3 Preston on Abstracts, 375; *Moody* v. *King*, 2 Bing., 447; *Thornton* v. *Krepps*, 37 Penn., 391, and cases cited; 2 Powell on Devises, 247; 1 Jarm. on Wills, 792; 1 Washb. on R. P., 135; Cruise Dig., title 38, chap. 17, §§ 27, 28.) The right of tenancy by the curtesy still exists, notwithstanding the acts of 1848 and 1849 and their amendments. (*In re Winne*, 3 Lans., 21, and cases cited; *Hurd* v. *Cass*, 9 Barb., 366; *Clark* v. *Clark*, 24 id., 581; *Lansing* v. *Gulick*, 26 How., 250; *Joyce* v. *Collins*, id., 496; *Beannet* v. *Hoyt*, 2 Robt., 307; *Ransom* v. *Nichols*, 22 N. Y., 110.)

*C. W. Sneden* for the respondent. The devise to plaintiff was a good expectant estate under the Revised Statutes. (1 R. S., 723, 724, §§ 16–26; *Norris* v. *Beyea*, 3 Kern., 273; *Fosdick* v. *Cornell*, 1 J . R., 439; *Anderson* v. *Jackson*, 16 id., 372; *Vedder* v. *Evertson*, 3 Paige, 281; *Maurice* v. *Graham*, 8 id., 484; *Heard* v. *Horton*, 1 Den., 165; 4 Kent, 271–281; *Trustees Theo. Sem.* v. *Kellogg*, 16 N. Y., 88.) The word *or* is never changed to *and*, except to carry out the obvious intent of the testator. (*Roome* v. *Phillips*, 24 N. Y., 470; *Roosevelt* v. *Thurman*, 1 J. Ch., 220; *Pond* v. *Berg*, 10 Paige, 152; *Van Vechten* v. *Pearson*, 10 id., 514.) An owner of an estate can effectually devise it to another immediately on the death of his heir-at-law; if the devise is conditional, the condition must supervene. (*Doe* v. *Simmins*, 1 Bos. & Ald., 549; 3 B. & P., 652, 653; *Moody*

v. *King*, 2 Bing., 449; Sugden on Powers [8th ed.], 479, note 1; Butler's Notes on Co. Litt., 241 *a;* Parks on Dower, 174–195; *Doe* v. *Hutton*, 3 B. & P., 653; *Ray* v. *Perry*, 5 Madd., 319; S. C., 5 B. & Ald., 565–569; *Whitmarsh* v. *Robinson*, 1 Coll., 574.)

JOHNSON, C. Upon the true construction of the will of Mary Wood, the estate of her daughter was a fee determinable upon the happening of the events on which the devise to the plaintiff was to take effect. The language of the primary devise is to the daughter and her heirs forever. Then followed a clause which, in the event of the return to the county of the son of the testatrix (the son was supposed lost at sea), gave them the estate in equal shares. The testatrix further directed that if the daughter should never have any children, or a child living at her decease, if her son should not return, then the devised estate was to go to the plaintiff in fee.

In the first place it is to be observed that the earlier part of the phrase in respect to the daughter's issue is inoperative and meaningless, taken in connection with the latter part of the same clause. If the daughter had no child living at her decease, it was of no consequence how many she might have had at an earlier period. If she had a child living at her decease, then, of course, it could not be true that she never had any children. The substance of the whole clause is the same as if the testatrix had said, if my daughter, at her decease, leaves no child living, and if my son does not return, then the estate is to go to the plaintiff in fee. The concurrence of both these events was necessary to carry the estate to the plaintiff. If the son returned, Hatfield took nothing irrespective of the question of the daughter leaving a child living. If the daughter left a child living, and the son did not return, Hatfield took nothing, and her issue living at her death would not have taken under the testatrix's will, but by descent from their mother, out of the fee devised to her, which had not been defeated by the prescribed events.

The return of the son, and the death of the daughter, with-

out leaving a child surviving her, were events, which, from their nature, would be determined within their two lives, and there is no objection on the ground of remoteness to the executory devise in favor of the plaintiff. Nor is there any question that both events on which the executory devise over to him was to take effect have been determined in his favor. The son, who had been absent three years in October, 1851, when Mary Wood made her will, had not returned or been heard of in March, 1861, when the daughter died without a surviving child. There is, therefore, such a presumption of his death that his return may be taken to have become impossible before the death of the daughter.

Nothing then stands in the way of the plaintiff's recovery, unless the defendant has an estate as tenant by the curtesy by reason of his marriage to the daughter and the birth of their living child during the marriage, who might, if she had outlived the mother, have inherited the whole estate in question. The defendant was, therefore, entitled to curtesy if the estate of his wife was such that curtesy could be had of it. The point thus presented has been the subject of elaborate discussion in the text-books, and of criticism upon the case of *Buckworth* v. *Thirkell,* decided by Lord MANSFIELD, and reported in 4 Doug. (323, Collect. Jur. 332; 3 B. & P., 652 n.), and upon that of *Moody* v. *King* (2 Bing., 447), which fully upholds it after it had been spoken of with disapprobation by Lord ALVANLEY in *Doe* v. *Hutton* (3 B. & P., 643, 651). The discussion has been so full and complete that it seems impossible to throw any additional light upon the views and various arguments which have been adduced upon it. The most accurate and comprehensive discussion which I have found upon the subject is in Washburn's Law of Real Property (vol. 1; §§ 11 to 21, of ch. 6, of book 1, pp. 131–135, and §§ 31 to 33, of ch. 7, of the same book, pp. 212–217), in which the cases in England and in the United States are stated and examined with ability. There results a division of opinion in the courts which is irreconcilable, and in respect to which, additional discussion is not

likely to afford advantage. To restate and reconsider this full discussion could only serve to incumber, by a useless parade of cases, the already too voluminous reports. The conclusion which is stated in the work cited (p. 135, § 21) is: "If the estate of the wife be an estate of inheritance, determinable by a limitation which operates to defeat her estate at common law the right of curtesy is gone. But, if the limitation over be by way of springing use, or executory devise, which takes effect at her decease, thereby defeating or determining her original estate, before its natural expiration, and substituting a new one in its place, which could not be done at common law, the seisin and estate which she had of the fee simple or tail will give the husband curtesy." It may properly be added that the strong objection proposed to this doctrine by its critics, is to the consequence which they deem unreasonable, that an estate determined according to the terms of its creation should by the incident of curtesy or dower be prolonged. To this, it seems to me a fair and complete answer to say as Lord COKE says (in *Paine's Case*, 4 Coke R., part VIII, Frazer's ed., p. 212, marg. 36 a) in answer to a similar difficulty as to curtesy after an estate tail determined by the death of the wife tenant in bail and of her issue, "the husband's estate shall continue, for it is not derived merely out of the estate of the wife, but is created by law," " by the privilege and benefit of the law *tacitè* annexed to the gift." This possible continuance of dower or curtesy as an incident of the estate created may well be deemed to have been in the contemplation of the testatrix, and is not an unreasonable or unnatural provision for the possible husband or wife of one clothed with a fee simple not defeasible, except upon death without children living. The only authority in this State in conflict with this conclusion is a decision at Special Term in *Weller* v. *Weller* (28 Barb., 588), in a case of dower, which was put upon the ground of the criticism in Park on Dower, upon Lord MANSFIELD's decision. The decision at General Term in the present case seems to have gone upon the ground that the interest given by the will of Mary

Wood to her daughter was a life estate only, with remainder to her issue, if any, as purchasers. This construction we have seen could not have been maintained, *Hatfield* v. *Sneden* (42 Barb., 615). There is another aspect of this case which, from the record, appears to have existed, or been in the highest degree probable, viz., that the daughter was, at her mother's death, her only heir-at-law. In that case she would have been in by descent in fee, and the only effect of the devise would be to create an executory limitation to Hatfield in case of the concurrence of the two events on which the estate is given over. That she would have been in by descent the preferable title, and not by the devise, is obvious. (*Doe* v. *Timins*, 1 B. & Ald., 530.) In that case it would be difficult to take from the estate in fee any of the incidents which the law has attached to such an estate, and impossible to deny that her husband was entitled to curtesy according to every definition given in the books of such an estate. In this aspect we may take it that the will is silent about the absent son and his possible return, and silent about the daughter, except as both are mentioned in limiting the executory devise. That no estate is devised either to son or daughter, but that the only provision of the will is, if my son shall not return, and my daughter shall die, leaving no child living, then I devise to Hatfield. Under such a will the daughter would take just what the will in question gave her, and for exactly the same estate. Being thus in by descent, there is in the books not only no warrant of authority, but not even a suggestion that the estate in fee by descent can be deprived of any of the lawful incidents belonging to estates in fee. It is not until those are exhausted that the executory devise to Hatfield can take effect in possession.

It may be regarded in another aspect, equally pointing to the same result. If the devise had created an estate tail (supposing such an estate could at that date have been created in this State), and it had been limited in tail general to the daughter, with remainder in fee simple to the plaintiff, that estate in the event which has happened would have had the

same duration as the fee given to her in this case. It would have terminated with her life, the issue in whom alone it could have continued having died before her. Yet, in that case, the husband's right to curtesy would have been clear, beyond all question. It would seem not a little singular that the greater estate, the fee simple which this daughter took, either by descent or devise, should not avail to give her husband that which he unquestionably would have taken had her estate been of an inferior quality and less than a fee simple.

Again, leaving out of view all technical aspects of the case, and looking only to the general intention of the testatrix, it is obvious that she did not mean the plaintiff to take anything unless her two children should be dead, and should have left no children living. She knew the son had no children, and was probably dead, but if he came back he and the daughter were each to have a half. If he did not return, the daughter was to have the whole, but if she died leaving no child, then, her descendants being extinct, the estate was to go to plaintiff. Her purpose was not to lower the quality of her daughter's estate or to deprive it of the ordinary incidents of estates in fee, but only to give it over when there should remain no longer any one to hold it representing her daughter.

The only remaining question is as to the effect of the married women's acts of 1848 and 1849 upon the law in respect to curtesy. After sundry conflicting decisions, the law has become substantially settled, that while those acts excluded the husband during life from control of, or interference with, his wife's separate real and personal estate, and gave to her alone the power of disposition by deed or will, yet they left the husband the right of curtesy in her real property and of administration for his own benefit of her personalty, in so much as remained at her death undisposed of and unbequeathed. (*Matter of Winne*, 2 Lansing, 21; *Ransom* v. *Nichols*, 22 N. Y., 110; and *Barnes* v. *Underwood*, 47 id., 351.)

The judgment should be reversed, and judgment rendered for defendant on the verdict, with costs.

All concur; LOTT, Ch. C., not sitting. Judgment accordingly.