the maintenance thereof are here set forth, to wit, representation, falsity, scienter, deception, and injury.

To support an action for false representations, the damages must have been caused thereby. That damages flowed by reason of the falsity of said representations relative to the checks can be seen from said complaint. The affidavits and the complaint are replete with facts showing that property had been parted with by reason of defendant's false representations, and therefrom can be gleaned sufficient to meet the requirements of section 549 of the Code of Civil Procedure. That being the fact, no amended complaint is made necessary within the purview of section 558 of the Code of Civil Procedure. Thus the court believes that the first, second, and third grounds for vacating the order of arrest are untenable.

As to the fourth objection, the court is of the opinion that a sufficient ground is stated in said order for the arrest of the defendant; the ground being "fraud and misrepresentations in inducing plaintiff to enter into a sale and delivery of merchandise." Of course, it was not exactly the plaintiff who was induced, etc., but his assignor, and the attorney for plaintiff explains that the word "assignor" was omitted after the word "plaintiff's" by reason of a clerical error, which explanation the court believes sufficient, and the omission thereof does not warrant vacating said order of arrest.

An undertaking in proper form is attached to the order of arrest, and same was approved as to form and sufficiency by the justice who signed and allowed the order of arrest, that being all that was necessary; and it seems to the court that the fifth ground must also fall, and that the motion to vacate the order of arrest upon all the grounds stated be denied.

Motion denied. Submit order.

---

(63 Misc. Rep. 156.)

## In re STARBUCK'S ESTATE.

(Surrogate's Court, Westchester County. April 12, 1909.)

1. CURTESY (§ 7*)—REQUISITES—CONCURRENCE.

All the requisites of curtesy existed where there was a valid marriage, children born alive from the union, and the wife died seised of real property.

[Ed. Note.—For other cases, see Curtesy, Cent. Dig. § 5; Dec. Dig. § 7.* For other definitions, see Words and Phrases, vol. 2, pp. 1796–1797; vol. 8, p. 7625.]

2. CURTESY (§ 1*)—NATURE OF ESTATE.

Curtesy is an estate created by law in the real property of the wife, subject to being divested by her will or deed and is not derived from the wife's estate or by inheritance from her; Laws 1896, p. 619, c. 547, § 281, the general rule of descent, not including curtesy, and section 280 providing that that article does not affect a limitation of an estate by curtesy.

[Ed. Note.—For other cases, see Curtesy, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CURTESY (§ 10*)—"CURTESY INITIATE"—"CURTESY CONSUMMATE."

Curtesy is initiate from the time of seisin and the birth of issue alive, and, unless it is defeated by the disposal of the property by will or deed, becomes consummate on the wife's death, and relates back to the time it became initiate.

[Ed. Note.—For other cases, see Curtesy, Cent. Dig. § 15; Dec. Dig. § 10.*

For other definitions, see Words and Phrases, vol. 2, pp. 1797–1798.]

4. TAXATION (§ 878*)—"TRANSFER" TAX—PROPERTY SUBJECT—ESTATE BY CURTESY.

The right of curtesy not being derived from the wife's estate or acquired by inheritance is not taxable, under Laws 1896, p. 868, c. 908, § 220, imposing a tax upon transfer of any property where the transfer is by will or by the intestate laws from any person dying possessed of the property; the husband's right not being acquired by a "transfer" within the statute.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 878.*

For other definitions, see Words and Phrases, vol. 8, pp. 7064–7070, 7819.]

5. TAXATION (§ 876½*)—TRANSFER TAX—EXEMPTIONS.

While one claiming exemptions under a general tax law must show that the property is specifically exempted by statute, such a showing is not necessary to exempt property from the collateral inheritance and tax act; it affecting only special classes of persons.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 876½.*]

In the matter of the appraisal of the estate of Maria B. Starbuck for taxation under the inheritance tax law. From an order confirming the report of the appraiser and fixing the tax, G. Fred Starbuck appeals. Reversed and remitted, with directions.

J. Mortimer Bell, for appellant.
John J. Sinnott, for the State Comptroller.

MILLARD, S. This is an appeal from an order confirming a report of the transfer tax appraiser and fixing the transfer tax on the estate of Maria B. Starbuck, deceased. The only question to be decided by me is whether or not the value of the husband's right of curtesy in the undisposed-of real estate of his wife should be deducted from the amount of the estate left by her before fixing the tax, or whether it shall be taxed as a part thereof. It is admitted that the appellant G. Fred Starbuck was the husband of Maria B. Starbuck, deceased; that she died seised of certain real property in the city of Mt. Vernon; that children were born alive of the marriage; and that the said Maria B. Starbuck is now dead. There can, therefore, be no question in this case that all of the requisites necessary to give the husband the right of curtesy existed. That he has such a right has not been disputed by the appraiser, and is admitted in the Comptroller's brief. It is a cause of great surprise to me, to say the least, to find that at this late date no decision upon this subject has ever been rendered, and that the question is to be decided by me apparently for the first time. 1 Burrill's Law Dictionary, p. 412, referring to curtesy, says it is "an estate to which a man is by law entitled, on the death of his wife, in the lands

or tenements of which she was seised during the marriage in fee simple or fee tail, provided he had issue by her, born alive, during the marriage, and capable of inheriting her estate."

It further says:

"It is a species of freehold estate, not an inheritance, and equally known to English, Scotch, and American law"—citing 4 Kent's Coms. 27, 28.

Prior to the married women's acts of 1848, 1849, and 1860 (Laws 1848, p. 307, c. 200; Laws 1849, p. 528, c. 375; Laws 1860, p. 157, c. 90) the husband had the absolute right to the wife's property during his life, but after the passage of these acts the wife had the right to sell and dispose of her property the same as if she was a feme sole. By the provisions of these acts, therefore, the wife had the right to cut off and defeat the husband's right of curtesy either by will or deed if she saw fit to do so; in other words, the husband's right of curtesy still existed subject, however, to the right of the wife to divest him of it by will or deed. "The husband's estate is not derived merely out of the estate of the wife, but is created by law, and is tacitly annexed to the gift, and so continues as an incident of the estate created notwithstanding the termination thereof by the happening of the specified event." Hatfield v. Sneden, 54 N. Y. 280. "The common-law rights of a husband as tenant by the curtesy are not affected by the acts of 1848 and 1849, for the more effectual protection of the property of married women, as to the real estate of the wife undisposed of at her death." Hatfield v. Sneden, 54 N. Y. 280.

This seems to be the only authority upon this question, but it has never been criticised or disputed in any way, and the conclusion is inevitable that, if the right of curtesy was not affected by the acts above referred to, it must still exist as it did originally. The married women's acts above referred to were repealed by chapter 272, p. 215, Laws 1896, known as the "Domestic Relations Law," and the provisions of those acts are now embodied in section 20 of said domestic relations law. In addition to the case of Hatfield v. Sneden, above referred to, which holds that the husband's estate of curtesy is not derived out of the estate of the wife, but is created by law, I might in this connection call attention to the fact that the general rule of descent of real property in this state makes no reference whatever in regard to the right of curtesy, but disposes of the real estate of an intestate as follows:

"Sec. 281. General Rule of Descent. Real property of a person who dies without devising the same shall descend:

"(1) To his lineal descendants.

"(2) To his father.

"(3) To his mother; and

"(4) To his collateral relatives, as prescribed in the following sections of this article."

The right of curtesy, however, is recognized in this same real property law (chapter 547, p. 619; Laws 1896), and at the end of section 280 the following provision will be found:

"This article does not affect a limitation of an estate by deed or will, or tenancy by the curtesy or dower."

It must be thus evident that, if the right of curtesy was an inheritance, it would be provided for in section 281 above set forth; but no mention whatever is made, and it would, therefore, be otherwise disposed of were it not for the common-law right which is still recognized by the above quotation from section 280. Section 220, c. 908, p. 868, Laws 1896, provides as follows:

"Taxable Transfers. A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of $500 or over or of any interest therein or income therefrom in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property in the following cases:
"(1) When the transfer is by will or by the intestate laws of this state from any person dying seised or possessed of the property while a resident of the state."

There are other provisions of this section, but all of them refer, except in the case of a transfer made during the lifetime of a person, to a transfer by will or the intestate laws of the state, and, as above shown, the husband's right of curtesy is not acquired by him by will or by reason of the intestate laws, but is a common-law right which during the lifetime of his wife was initiate, but which after her death became consummate, and his right to the same could not be questioned from the time that his wife was seised of the property and their children were born alive, unless the wife saw fit to dispose of the same by will or deed. In this case, having failed to do either, the husband's right to the same dates back to the time when these conditions existed, and, although his right to possession owing to her right to divest him if she saw fit must be postponed until her death, still it nevertheless existed and could be taken away in no other way. The Court of Appeals in the Matter of Gould, 156 N. Y. 423, 51 N. E. 287, have defined the meaning of the word "transfer":

"The word 'transfer' in the act in relation to taxable transfers of property is used in its ordinary legal signification, namely, that the owner of a thing delivers it to another with the intent of passing the right which he has in it to the latter."

It is quite evident that from this definition no transfer was made by the wife of the right of curtesy claimed by the husband in this case. There is only one other point raised in this case which I consider necessary to pass upon at this time. It is claimed by the respondent that, in order to entitle the appellant to relief, he must show that the property claimed to be exempt is specifically made so by statute. I think he is wrong in this statement. This would be so in reference to a general tax law, but the collateral inheritance and tax act is looked upon as a special tax reaching only special cases and affecting only special classes of persons. The decision submitted by the respondent, read with this distinction in full, will show that he is wrong in applying them to this case.

The Court of Appeals in the matter of Enston, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464, referring to this act, say:

"The tax imposed by this act is not a common burden upon all the property or upon the people within the state. It is not a general, but a special, tax, reaching only to special cases and affecting only a special class of per-

,sons. The executors in this case do not, therefore,, in any proper sense claim exemption from a general tax or a common burden. Their claim is that there is no law which imposes such a tax upon the property in their hands as executors. If they were seeking to escape from general taxation, or to be exempted from a common· burden imposed upon the people of the state generally, then the authorities cited by the learned counsel for the people, to the effect that an exemption thus claimed must be clearly made out, would be applicable. But the executors come into court claiming that the special taxation provided for in the law of 1885 is not applicable to them, or the property which they represent. In such a case they have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law."

To the same effect, see Matter of Kennedy, 113 App. Div. 4, 99 N. Y. Supp. 72; Matter of Miller, 77 App. Div. 473, 78 N. Y. Supp. 930; Matter of Vassar, 127 N. Y. 12, 27 N. E. 394.

While there has been no decision exempting the right of curtesy from taxation, my attention has been called to a decision which exempted the value of a right of dower of a widow in her husband's real estate, and, as far as this is authority, I cannot help but feel that it substantiates this decision because the husband's right of curtesy is as much his as the widow's right of dower is hers, except for the fact that the wife has the right to divest him of it by will or deed if she sees fit so to do; but, when she fails, as in this case, to make any disposition of the property and dies intestate, then the right of curtesy in the husband becomes his without the power of any one to change it.

It follows that the order heretofore made assessing and fixing the transfer tax upon the estate of Maria B. Starbuck should be reversed, and the same remitted to the appraiser for modification in accordance with this opinion.