## In re STARBUCK'S ESTATE.

(Supreme Court, Appellate Division, Second Department.   April 22, 1910.)

1. CURTESY (§ 1*)—NATURE OF ESTATE.
   The estate by curtesy arises from the marriage relation, the law adjudging the freehold to be in the husband immediately upon the wife's death intestate, and the estate implies no transfer and is an incident to the wife's death and intestacy only in the sense that the estate is limited to vest upon the happening of such events; it not being created thereby and not falling under the statutes of descent.
   [Ed. Note.—For other cases, see Curtesy, Cent. Dig. § 1;  Dec. Dig. § 1.*]

2. CURTESY (§ 7*)—NATURE OF ESTATE.
   Before the married woman's acts of 1848, and 1849 (Laws 1848, c. 200; Laws 1849, c. 375), under which a wife must die seised and without alienation by deed or will to permit the estate by curtesy to vest, such estate was completed by marriage, birth of heir, seisin of wife, and her death.
   [Ed. Note.—For other cases, see Curtesy, Cent. Dig. § 5;  Dec. Dig. § 7.*]

3. TAXATION (§ 878*)—"TRANSFER" TAXES—CURTESY—"INTESTATE LAWS."
   Laws 1905, c. 368, § 220, subd. 1, provides for a tax upon the transfer of any property or interest therein when the transfer is by will or the intestate laws of the state, from any person dying seized or possessed of property; the term "intestate laws" referring to the statutes governing the descent and distribution of a decedent's property.   Real Property Law (Laws 1896, c. 547), § 280, in force when chapter 368 was enacted, provided that the article (relating to descent) did not affect tenancy by curtesy or dower.   Held, that an estate by curtesy, not being derived from the wife's estate nor acquired by inheritance, is not taxable under section 220; there being no "transfer" thereof within the section.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1700;  Dec. Dig. § 878.*
   For other definitions, see Words and Phrases, vol. 4, p. 3733;  vol. 8, p. 7064–7070;  vol. 8, p. 7819.]

4. STATUTES (§ 188*)—CONSTRUCTION—OBJECTS NOT INCLUDED IN TERMS.
   A statute will not be enlarged by construction to take in objects not included by its terms.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 266;  Dec. Dig. § 188.*]

   Woodward, J., dissenting.

Appeal from Surrogate's Court, Westchester County.

In the matter of the appraisal of the estate of Maria B. Starbuck under the acts in relation to the taxable transfers of property.   From a decree of the Surrogate, reversing a former order confirming the report of the Appraiser (63 Misc. Rep. 156, 116 N. Y. Supp. 1030), the State Comptroller appeals.   Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, THOMAS, and CARR, JJ.

William A. Moore (Edward H. Fallows, on the brief), for appellant.
J. Mortimer Bell, for respondent.

THOMAS, J.   Is an estate by the curtesy taxable under chapter 368 of the Laws of 1905, and amendatory acts relating to taxable transfers?   Section 220; so far as here pertinent, provides for a tax upon the "transfer of any property  *  *  *  or interest therein or in-

come therefrom, in trust or otherwise, to persons · * * · * in the following cases : (1) When the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of the property." The words "intestate laws" refer to the statutes governing the descent and distribution of a decedent's property. Section 280 of the real property law (Laws 1896, c. 547), in force when chapter 368 was enacted, provided :

"This article (the one relating to descent) does not affect * * * tenancy by the curtesy or dower."

That statute is the law's will for the disposition of property when its owner dies without will. Upon inspection to discover what interests it transfers, it is found that it does not transfer an estate by the curtesy, but disclaims any effect upon such an estate. That is, it leaves it untouched as a matter that does not concern it. Hence the taxing statute does not include it. But the pith of the opposite view is best expressed by Woodward, J. :

"The real estate" of the decedent "was transferred as a whole under the intestate laws of this state; the title vested in her heirs at law, subject to the tenancy by the curtesy of Mr. Starbuck, under the provisions of the marriage contract. There was no new estate created at any time. At the moment of Mrs. Starbuck's death there was one estate—one distinct entity —and that estate passed, by operation of law, to the heirs at law, with the immediate right of possession in Mr. Starbuck. His right to possession is merely a part of the estate of which Mrs. Starbuck died seised, and it all passed under the operation of the intestate laws of this state. The right to possession, the tenancy by the curtesy, could not exist except for the fact that the tangible property passed to the heirs under the provisions of the intestate laws of this state; and it is a right in subordination of the title, an incident of the intestacy of Mrs. Starbuck, and it has no existence except as it is a part of the estate which she owned and possessed at the instant of her death."

I cannot conceive that at Mrs. Starbuck's death one distinct entity— one whole estate—passed, by operation of law, to the heirs at law, with immediate right of possession in Mr. Starbuck. An estate of inheritance passed to the heirs, but the law subjected it to an estate for life in Mr. Starbuck. The heirs no more took tangible property than did Starbuck, and their estate was subordinated in enjoyment to his, not his to their, estate, save as the quantity of a life estate is inferior to the quantity of an estate of inheritance.

But the essential inquiry is : From what source did his estate come? Certainly not from the transfer to the heirs of the fee subject to his life estate. He did not inherit as the heir of his wife an estate by the curtesy or any other estate. He was not her heir. No recognized law of intestacy can be invoked that in the slightest degree indicates such a transfer or such relation. The contrary has been stated by this court. Matter of Winne, 2 Lans. 23. Later I will instance the existence of curtesy since the statute of 1848, where nobody could inherit from the wife. But keeping to the point under present discussion, the truth is that the heirs' taking was concurrent with his taking, but not the cause of it. If they had not received their estate, he would not have received the life estate. That is, if she had not died intestate, neither would have taken. Her intestacy was the condition.

of his taking, but not the source of his estate. The heirs took by reason of her intestacy and traced title through the statute of descent. He could even convey, and his grantee claim in hostility to their title. Christie v. Gage, 71 N. Y. 189, 193. He took title upon her death intestate, but not by a transfer thereby created. From the fact that she did not devise it arises the fact that his right to take was not destroyed. She was capable of forestalling and preventing an estate, but could not make such estate. She simply did not preclude the operation of law that matured it upon her death. But when one seeks for any act on her part it cannot be found. His estate did not spring from her forbearance. He is indebted to such forbearance for obtaining what the law provides for him, but nothing more. There is no more mystery about the source of this estate than existed before the passage of the married woman's acts, and there is no suggestion in any ruling decision that the husband's interest was changed in nature or derivation on account of such acts. The authoritative decisions are that the acts of 1848 and 1849 have not interfered with nor affected the husband's estate in his wife's real property, if not disposed of by her either during life or by will. Hatfield v. Sneden, 54 N. Y. 280; Burke v. Valentine, 52 Barb. 412, affirmed (Ct. App.) 6 Albany Law J. 167; Ransom v. Nichols, 22 N. Y. 110; Barnes v. Underwood, 47 N. Y. 351; Leach v. Leach, 21 Hun, 381.

So whatever its nature was it is; from whatever it formerly sprung it at present arises. The estate by the curtesy is in part dependent upon the birth alive of issue capable of inheriting, but not of issue who in fact inherit. Indeed, it is immaterial that they die before the wife is seised. The wife might die without heirs of her body, or indeed any heirs, and the land escheat to the state; but curtesy would remain. She must have an estate of inheritance and must die at some time seised of it; otherwise she could not have issue capable, if living, of inheriting it. There was some old learning suggested in Matter of Winne, 2 Lans. 21, that the husband's estate is a continuance of the wife's estate. This is the reverse of transfer from her. It implies no transfer. The estate arises from the marriage relation. It is "an estate by the favor of the law of England." 2 P. Wms. 703. Upon the death of the wife, the law adjudges the freehold to be in the husband immediately, as tenant by the curtesy (Witham v. Perkins, 2 Greenl. [Me.] 400; Cruise, Dig. p. 161), where it is said, citing Paine's Case, 8 Rep. 36a, that:

"The tenant by the curtesy shall be attendant on the lord paramount for the services due in respect of the lands that he holds by this title."

This old doctrine that tenancy by the curtesy is created by the law is the modern exposition. Reeves' Real Property, p. 88; Adair v. Lott, 3 Hill (N. Y.) 182. Indeed, it is not controverted. Its origin and continuance is due to the law, but not the law that appoints the inheritable property of an intestate to prescribed heirs. It is unimportant in the present inquiry upon what theory, adopted at remote time and now obscure in motive, the law proceeded in making this transfer to the husband. It is only necessary to establish that it was not and is not an intestate law. As already noticed, the acts of 1848 (Laws 1848, c.

200) and 1849 (Laws 1849, c. 375) left intact every feature of this estate except as they gave the wife ability to defeat it, if her estate should permit such defeasance. If she did not do an act in defeasance, the former estate, not some new estate, existed in full right at her death. I find no reason for the suggestion that this ancient estate, the only one the law gives to a husband in the real property of his wife, honored through so many centuries, pronounced by our highest court as surviving, though made uncertain of enjoyment by the acts of 1848 et seq., should be regarded as an incident to the wife's death and intestacy; that is, as something dependent thereon, hence originating therein, and so falling under the statutes of descent. Before the acts of 1848 and 1849 the law caused the estate to progress to completion through marriage, birth of heirs, seisin of wife, and her death. The only change is that, unless she have a base or determinable fee, she must die seised and without alienation by deed or will, to permit the estate to vest. The suggestion that the husband's estate is an incident to her death and intestacy—that is, dependent upon them—is true only in the sense that the estate is limited to vest upon the happening of such event. It is not unusual that a state should be limited or conditioned on the death of a person intestate or otherwise, and in that sense the estate is dependent upon the named events; but the events are not causative. An estate may be given with power of appointment; but no one would ascribe the creation of the estate to the first taker, because he failed to exercise his power to alienate it, and suffered it to go as directed in case of such failure. So the law gave Mrs. Starbuck power to alienate and thereby defeat the estate by the curtesy, but her sufferance was not creative of the estate. Passivity is not a creative agency. The husband's estate is contingent upon the omission of the wife to dispose of her property. Matter of Clark, 40 Hun, 233, 237.

It is contended that curtesy initiate cannot exist, and that the husband has a mere status, or possibility. Such was the decision in Collins v. Russell, 96 App. Div. 137, 89 N. Y. Supp. 414, where, however, the court said that the common law "still governs tenancy by the curtesy," and Albany Co. Sav. Bank v. McCarty, 149 N. Y. 85, 43 N. E. 427. What then? Does it follow that when the husband does have such estate in right and enjoyment it is because he inherited it from her as if he were her heir? That seems a non sequitur. In her life it did not rise to the dignity of an estate. At her death it did. Why? Because she did not exercise her power of disposition and defeat it. The learned counsel for the appellant argues that curtesy initiate requires the husband's seisin through coverture; that the wife's death first gives him seisin, and the husband receives her estate by her death intestate—that is, he takes his entire seisin at that time and at that time only, at that time only the estate is transferred to him. But the question remains, transferred by whom or by what? According to plaintiff's contention, he could take his curtesy only by her intestacy. But undoubtedly he can and does. In Hatfield v. Sneden, supra, the wife had a fee determinable upon two events, the failure of her son to return and her death without a child surviving, and upon these hap-

pening a limitation over in the nature of an executory devise. She died, and the fee went over; but the husband took his curtesy. He did not take it by her death intestate, for nothing descended from her. It was one branch of the discussion that she could preferably have taken as heir at law of the testator; but this argument was used to reinforce the holding that the husband took his estate in any case. He had not curtesy initiate. Her intestacy had no possible effect, and yet his estate arose. But the court perceived clearly the source of the estate, for the opinion quotes the words of Lord Coke:

"The husband's estate shall continue, for it is not derived merely out of the estate of the wife, but is created by law," "by the privilege and benefit of the law tacite annexed to the gift."

A statute is not enlarged to take in objects not included by its terms. If the Legislature has inadvertently omitted property that should be taxed, it should correct its error. Meanwhile it is the duty of the courts to observe settled legal conceptions. So the law preserves its symmetry.

I think that the surrogate stated correctly the principles, and that the decree should be affirmed. All concur, except WOODWARD, J., who dissents.

WOODWARD, J. (dissenting). Maria B. Starbuck died, a resident of Mt. Vernon, Westchester county, on the 1st day of June, 1907. On the 1st day of August, 1907, an order of the surrogate of Westchester county was made and entered, appointing Michael J. Walsh, Esq., appraiser under the provisions of chapter 368 of the Laws of 1905, relating to taxable transfers, and the amendments thereof and supplemental thereto. At the time of her death Maria B. Starbuck left surviving a husband, G. Fred. Starbuck, and three infant sons as her heirs at law and next of kin. She died intestate, and letters of administration were issued to her husband as administrator on the 13th day of June, 1907. Included in the assets of the decedent's estate was a one-third undivided interest in certain real estate at Mt. Kisco, valued by the appraiser at $1,000, and a house and lot in Mt. Vernon, appraised at $15,500. This latter property was subject to a mortgage, with accrued interest, aggregating $4,428.57, leaving an equity appraised at $11,071.43. Decedent's husband claimed an estate of curtesy in this real estate valued at $7,088.50, and that the value of such curtesy should be deducted from the net value of such real estate as an exemption under the law. The appraiser declined to recognize this claim, and appraised the total value of the decedent's estate, both real and personal, at $19,503.39, fixing the value of the husband's curtesy at $7,837, upon which he allowed no exemption. On the 10th day of March, 1908, an order of the surrogate was entered confirming said report of the appraiser and assessing and affixing the tax in accordance therewith. Under this order the fair market value of the husband's total interest was assessed at $9,148.59, including the estate of curtesy, and the tax thereon was fixed at $91.48. From this decree of the surrogate the administrator appealed, and on the 27th day

of May, 1909, the surrogate made a decree allowing said appeal of the administrator and ordering and adjudging:

"That the value of the curtesy right of G. Fred Starbuck, husband of said Maria B. Starbuck, deceased, in and to her estate, amounting to $7,837, be and the same hereby is, deducted from the sum total of the decedent's personal and real estate."

By the same decree it was further provided that, the balance of the estate being less than $10,000, the estate was not taxable, but should be exempt, and that the report of the tax appraiser should be modified in conformity with the terms of such decree, and that the order entered on said report levying a tax on the estate should be reversed. From this decree and order the State Comptroller has appealed to this court.

The single question presented upon this appeal is whether the estate of curtesy which the husband takes in the undevised real property of which his wife died seised is taxable under the provisions of section 220, c. 368, Laws 1905, relating to taxable transfers (Consol. Laws, c. 60, art. 10), which provides as follows:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property, in the following cases: (1) When the transfer is by will or by the intestate laws of this state from any person dying seized or possessed of the property while a resident of the state."

The learned surrogate in an opinion seems to hold that the decedent's husband, upon the birth of issue, became vested with what was known to the common law as "curtesy initiate," and that his wife, never having exercised the power to dispose of her estate, the right became consummate at her death, and related back to the birth of issue capable of inheriting the estate, so that in fact he was vested with his title to the property prior to her death, and it did not come to him under the intestate laws of the state. I am of the opinion that this is an erroneous view of the law. Under the common law, prior to the enactment of the laws for the enlargement of the rights of married women in 1848 and 1849, whenever the wife, at or during the marriage, was seised of an estate of inheritance, and had issue by her husband, born alive, and she died before the husband, he had the right to her estate during life. During that time—that is, during the husband's life, after the death of the wife—his estate was called an estate by the curtesy. Bingham on Real Estate, p. 654, and authorities there cited. Prior to the death of the wife, the husband immediately upon the marriage became entitled to the possession and use of his wife's property, whenever she had any property held in her own right. Estates in land were not an exception to this rule, but were subject to the possession and control of the husband, and remained so as long as the marriage relations continued. During that time he became the tenant in the place of the wife, and the interests held by him in her estates of inheritance were regarded as freehold estates in him, because he might thereby continue to be the tenant during his natural life. The rents and profits were his sole property; and thus, practically, he was

the sole tenant for the time, so far as related to the possession of the premises, as completely as though he was the tenant in fee. If the husband died first, the wife resumed her estate. At the marriage, as we have seen, as a part of the contract which the law wrote into every marriage ceremony, the husband became entitled to the possession and use of his wife's property, including the possession and income of real property during the continuance of the marriage relation; he was practically sole tenant, but this condition lasted only during the marriage relation. If the husband died, the wife resumed her estate; but, if the wife died, the husband's tenancy was at an end, unless it happened that during the marriage issue were born to them capable of taking the estate. In that event the husband's right to a tenancy by the curtesy became initiate, and at the death of the wife it was consummate. In other words, the right of the husband to enjoy the estate of his wife during marriage was prolonged during his natural life if issue capable of taking was born during the marriage; the original right became vested at the marriage; the right to a tenancy by the curtesy became vested when issue capable of taking was born. From that time the husband had not merely a tenancy during the life of his wife, but one continuing after her death and during his natural life; but he did not enter upon the enjoyment of this latter estate until the death of his wife. Before that time he was, under the fiction of the common law merging husband and wife, the sole tenant of her real estate, and his estate of tenancy by the curtesy did not begin until the prior tenancy was ended by the death of his wife. He had a property right in the tenancy by the curtesy immediately on the birth of issue capable of taking the property; but his right to possession under such tenancy did not become consummated until the prior tenancy was terminated by the death of his wife (see Bingham on Real Estate, pp. 652–657, inclusive, with authorities cited), so that when the court, in Hatfield v. Sneden, 54 N. Y. 280, 287, declared that, "after sundry conflicting decisions, the law has become substantially settled that while those acts (the acts to enlarge the rights of married women) excluded the husband during life from control of, or interference with, his wife's separate real and personal estate, and gave to her alone the power of disposition by deed or will, yet they left the husband the right of curtesy in her real property and of administration for his own benefit of her personalty, in so much as remained at her death undisposed of and unbequeathed," it undoubtedly stated the law as it existed at that time; but it did not hold or intimate that the right of curtesy remaining to the husband related back to the birth of issue capable of taking, and gave him a property right at that time.

Tenancy by the curtesy never existed until the death of the wife. The right to it, at common law, became initiate at the birth of issue; but when the Legislature gave to the wife the absolute control of her property during life, it took away the property right which before came into being with the birth of issue, and left the husband in a position where he had no rights whatever in her property unless at her death she had failed to dispose of the same. The birth of issue capable of taking was a condition which must exist to give the husband

any rights as a tenant by the curtesy, but that event did not vest in him any legal rights in the property of the wife; it merely established a status which the wife might permit to grow into a right by failing to dispose of her separate estate, but this right, if it came into existence at all, dated, not from the birth of the child, but from the happening of the event which terminated her power to dispose of her property. When that event occurred, the rights of the husband depended upon the question of whether issue had been born, but the death of the wife did not relate back to the birth of the child and give the husband a property right as of that date, because the sole power over the property, during the life of the wife, was in her; she had a perfect right at any time, up to the moment of her death, to dispose of the property, and while the title to the property and the right to dispose of the same were in her, and these were not affected by the birth of issue, there was nothing in the fact of the birth to which the subsequent death could relate. Upon the death of the wife the relation back was to the contract of marriage. That contract, in effect, provided that the wife, as the owner of an estate, should not be deprived of any of the rights in her property which belonged to her as a single woman. She should continue, as a wife, to have and to hold her property subject to her own individual will during her life, the same as though she had not married, with the right to dispose of the same by deed or will, and at her death, if she had failed to dispose of the same, that it should go to her heirs at law and next of kin, unless at some time during the marriage relation issue had been born to them, in which event the husband was to have a tenancy by .curtesy. That was in effect the contract which was entered into between parties contracting a marriage after the adoption of the statutes of 1848 and 1849, and as the birth of issue did not initiate any right in the husband, upon the death of the wife a new right, growing out of the contract of marriage, came into being, and it could not and did not relate back and vest rights in the husband to which he had no legal or equitable claims before. Equity sometimes makes its decrees relate back to undo a wrong; but it is a new doctrine that a right growing out of a particular contract can be made to relate back and give rights where no such right could have existed, for the purpose of avoiding the effects of a statute designed to produce the public revenues. Moreover, tenancy by the curtesy is not a new estate; it is merely a part of an estate which the law, under certain circumstances, assigns to the husband, while leaving to the heirs or devisees of the deceased wife the remainder, subject to the use. It is, in this respect, not to be distinguished from the dower rights of a widow. Speaking of this right, Bingham on Real Estate, p. 601, says:

"By some of the text-writers it is classed among the life estates, and is said to be created by operation of law. It is true that the widow's right of dower is limited to the period of her natural life; but it is not true that her right is an integral estate, like an estate for life created by a lease. It is no new estate, but only a part of an estate, which the law, in certain contingencies, assigns to the widow, while it leaves the remainder to the heirs or devisees of the deceased husband, in case he dies seised; and to his assignees when he had assigned before his death. It is the division of an estate in fee by operation of law, and not the creation of a new estate by such

óperation. An estate, as before shown, is always the result of a contract, and cannot be created by operation of law. The law sometimes supplies certain provisions to a contract, and gives to them the same force as though they were expressed in the contract itself; but it makes no contracts for individuals. It frequently divides, but never makes, an estate."

If I am right in the conclusions so far reached, it follows that the real estate of Mrs. Starbuck was transferred as a whole under the intestate laws of this state; the title vested in her heirs at law, subject to the tenancy by the curtesy of Mr. Starbuck, under the provisions of the marriage contract. There was no new estate created at any time. At the moment of Mrs. Starbuck's death there was one estate —one distinct entity—and that estate passed, by operation of law, to the heirs at law, with the immediate right of possession in Mr. Starbuck. His right to possession is merely a part of the estate of which Mrs. Starbuck died seised, and it all passed under the operation of the intestate laws of this state. The right to possession, the tenancy by curtesy, could not exist except for the fact that the tangible property passed to the heirs under the provisions of the intestate laws of this state; it is a right in subordination of the title, an incident of the intestacy of Mrs. Starbuck, and it has no existence except as it is a part of the estate which she owned and possessed at the instant of her death. To say that this right of curtesy did not pass to Mr. Starbuck under the intestate laws of this state is contrary to reason and contrary to law. This is plainly manifest when we turn to section 243 of the tax law (chapter 60, Consol. Laws), and read the definitions there given. These are not strictly in line with the definition of "transfer" as made by the Court of Appeals in Matter of Gould, 156 N. Y. 423, 427, 428, 51 N. E. 287, where an entirely different question was at issue, and the court did not pretend to quote the statute definition.

In the section cited the statute defines the words "estate" and "property," and declares that they "shall be taken to mean the property or interest therein of the testator, intestate, grantor, bargainor or vendor, passing or transferred to those not herein specifically exempted from the provisions of this article, and not as the property or interest therein passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees or vendees, and shall include all property or interest therein, whether situated within or without this state," and that "the word 'transfer,' as used in this article, shall be taken to include the passing of property or any interest therein in possession or enjoyment, present or future, by inheritance, descent, devise, bequest, grant, deed, bargain, sale or gift, in the manner herein prescribed." That is, the word "property" used in section 220 relates to the property of Mrs. Starbuck at the time of her death; it is the property of which she died seised, and which was transferred by operation of the intestate laws of this state, and the meaning of the word "transfer" as used in that section includes "the passing of property" as thus defined, "or any interest therein in possession or enjoyment, present or future, by inheritance," etc. It is a tax upon the transferring—the passing—of the property of the deceased under the intestate laws of

this state, just as much as the fee passed to the heirs at law. The tax is levied, not upon the property, but upon the right of succession, and the estate of the deceased which passes, with "any interest therein in possession or enjoyment," determines the amount of the tax and the question of exemptions. The estate as a whole, as "estate" is defined in the act, is the estate which is to be considered, not the estates which vest in those who are to take, and as the decedent's estate which passed to her heirs at law, with a present right of possession in the husband, exceeded $10,000, it was not exempt under the law.

The decree appealed from should be reversed, and the decree affirming the report of the appraiser assessing and fixing the tax upon the decedent's estate should be affirmed.