In the Matter of the Estate of CARRIE B. MOSLEY (Also Known as CARRIE B. ISLER), Deceased.

Surrogate's Court, Kings County, January 17, 1931.

*Mortimer J. Redmond*, in person, for the petitioner.

*George J. Lesser*, for Henry Richman.

*Delafield, Thorne, Burleigh & Marsh*, for St. Cyprian's Episcopal Church.

*Kelly & Blinn* [*Eugene E. Kelly* of counsel], for the objectants.

WINGATE, S. The questions raised in this contested accounting proceeding concern the validity of the provisions of the will of Carrie B. Mosley, also known as Carrie B. Isler, who died July 9, 1927, and whose will was duly admitted to probate in this court. The executor named in the will duly qualified and thereafter died and letters of administration c. t. a. were issued to the present accountant on December 30, 1929.

The will after making provision for funeral expenses and the perpetual care of testatrix's burial plot, bequeathed her entire estate to certain charities, one located in Brooklyn and the other in New Bern, N. C. After appointing her executor, the testatrix provided in item " 4 " of her will: " I do authorize and empower

him to sell the whole or any part of my estate, real or personal, at public or private sale for cash or on credit, necessary in his judgment to carry into effect the provisions of this will."

The sole assets of the decedent consisted in the proceeds of certain life insurance policies aggregating about $1,000, and in premises 357 Cumberland street, Brooklyn, appraised at $8,760, subject to a mortgage of $2,050.

The debts which have been paid aggregated $195.13, and the funeral and administration expenses totalled slightly over $1,700.

The validity of the testamentary directions is attacked on the ground that they constitute a violation of section 17 of the Decedent Estate Law (as amd. by Laws of 1927, chap. 502) which reads as follows: " Devise or bequest to certain societies, associations, corporations or purposes.  No person having a husband, wife, child, or descendant or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association, corporation or purpose, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-half, and no more."

It is the contention of the objecting parties that at the time of her death the decedent was the wife of one Joseph Isler who was then living.

A copy of a decree made by the Superior Court of Craven county, N. C., was duly admitted in evidence by which it was adjudged " That the plaintiff, Carrie Isler, be and she is hereby granted a divorce from bed and board from the defendant, Joseph Isler, and the plaintiff shall have, use and enjoy her property, real and personal, free, and discharged of any claim, right, lien or demand on the part of Joseph Isler, the defendant."  The validity of this decree is in no way attacked and, therefore, as a result of section 1, article IV of the Constitution of the United States, it is a valid adjudication respecting the status of the decedent and said Joseph Isler which is here binding.  (*Matter of Bennett*, 135 Misc. 486, and cases cited.)

It is apparent from the terms of this decree that it does not, according to interpretation placed by the laws of the State of New York on similar decrees, amount to an absolute divorce, its effect, according to our law and practice being merely to grant a separation from bed and board.

On the hearing no evidence was introduced as to the effect given by the laws of North Carolina to a decree of this type, and since it is, of course, fundamental that our courts will not take judicial notice of the laws of other States (*Southworth* v. *Morgan*, 205 N. Y.

293, 296; *Harris* v. *White*, 81 id. 532, 544; *Matter of Smith*, 136 Misc. 863, 877, and cases cited), and that in the absence of proper proofs to the contrary, it will be presumed that the law of another State or country is the same as our own (*Ellis* v. *Kelsey*, 118 Misc. 763, 767, 768; affd., 208 App. Div. 744; affd., so far as this point is concerned, 241 N. Y. 374, 379; *Matter of Smith*, 136 Misc. 863, 878, and cases cited), it follows that the interpretation given to this decree by the court must be the same which would have been given to it had it been made by a court of this State.

In *People ex rel. Commissioners* v. *Cullen* (153 N. Y. 629), which concerned mutual rights and liabilities of the parties to a decree of separation, the court said (at p. 636): " The judgment in the divorce action did not dissolve the marriage. The parties still remain husband and wife in the eye of the law. Neither the husband nor wife was competent to contract a new marriage." Again (on p. 637) the court says: " Action for a limited divorce is really an appeal to a court of equity by one of the parties to a marriage contract for a modification of the marriage relations, duties and obligations as they exist at common law."

It follows from this determination that a decree of separation leaves the marriage status intact, changing merely the mutual rights and obligations of the parties in respect to personal and property relations. From this it must necessarily follow that after an entry of such decree the parties still bear to each other the relations of husband and wife, its only effect being to modify their customary rights and duties in the manner and to the extent provided in the decree of separation. Consequently, at the time of her death, the decedent herein had a husband living with the result that the inhibition contained in section 17 of the Decedent Estate Law respecting the bequests of more than one-half of her property to charity became applicable.

Evidence was introduced at the hearing which fairly demonstrated that the decedent at no time during her marriage to Joseph Isler had any children born alive of him, and that although she had been previously married she had had no children by such former husband. It was further satisfactorily demonstrated that she was a daughter of one Mary Bryant Norman, who had four other children, Laura who died in infancy, George Norman who is one of the objectors herein, Martha Bates Thompson who is also an objector herein, and Fred Douglass who survived the testatrix but died on June 12, 1928, leaving a widow, Polly, and two children, Fred Douglass, Jr., and Carrie Douglass Gunn.

Various phases of the testimony in the form of declarations by Mary Bryant Norman were objected to and were admitted subject

to such objections. It is reasonably apparent that such objections were unfounded, since they amounted to declarations respecting pedigree.

On this question the law is clearly set forth in *Aalholm* v. *People* (211 N. Y. 406). The court lays down the guiding principles (beginning at p. 412): " Declarations in regard to pedigree, although hearsay, are admitted on the principle that they are the natural effusions of persons who must know the truth and who speak on occasions when their minds stand in an even position without any temptation to exceed or fall short of the truth. (*Whitelocke* v. *Baker*, 13 Vesey, 514; *Berkeley Peerage Case*, 4 Camp. 401.) The admissibility of such declarations is subject to three conditions: 1. The declarant must be deceased. 2. They must have been made [413] *ante litem motam*, *i. e.*, at the time when there was no motive to distort the truth. 3. The declarant must be related either by blood or affinity to the family concerning which he speaks. " * * * More concretely stated, the decision is that such declarations are not competent, unless there is some proof *dehors* the declarations themselves, that the declarant was related to the family which the declarations are intended to affect. * * * " ·

The preliminary proofs required under the rule just noted were furnished by various items of documentary evidence in the form of · letters and a certified copy of the marriage certificate of the decedent to Joseph Isler, giving her mother's name as Mary Bryant and her birthplace as New Bern, N. C.

The right of objection by the respondents herein and the legal propriety of their raising the objection under section 17 of the Decedent Estate Law was questioned on behalf of the legatees, but it is well established that under the law existing prior to September 1, 1930, which is here applicable, any person may interpose the objection who would be entitled to a benefit by reason of a declaration of invalidity as a result of its operation. In *Matter of Stilson* (85 App. Div. 132) the court says (at p. 135): " The act can hardly be held to have been passed solely for the benefit of those named in the act. Its purpose is, to my mind, clearly broader than this. If, for instance, a man dies leaving a wife, while under the intestate laws of the State the wife would receive a portion of his property, she would not receive it at all. The next of kin of the husband are directly benefited under the terms of the statute. * * * In the illustration given it cannot be possible that the rights of the next of kin in the estate of the deceased husband can thereafter be dependent upon the election of the wife. If that [136] were so she could auction that election between the residuary legatee and the next of kin. Any interpretation of the statute

which would place the rights of the next of kin in such hazard would be unpractical and unreasonable." (See, also, *Matter of Eldredge*, 55 Misc. 636, 638; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485.)

It follows that the gifts to the charitable institutions under the will must be limited to one-half of the estate of the decedent less the debts, and that the other half will pass as on intestacy. (See *Matter of Brooklyn Trust Co.*, 179 App. Div. 262, 264, 265; *Matter of Seymour*, 239 N. Y. 259, 263; *Matter of Brown*, 135 Misc. 611, 613.)

The final question on this phase of the subject is as to whether the portion of the estate thus passing as intestate property should go to the heirs at law or the next of kin of the decedent.

It is perfectly obvious that the power of sale in the will being merely discretionary does not of itself effect an equitable conversion of the real estate into personalty. (*Matter of Gargiulo*, 138 Misc. 90, and cases cited.) Indeed, such a result would not be attained even had the power of sale been mandatory, as was determined in *Matter of Braasch* (206 App. Div. 96), the court saying (at p. 99): " That testatrix's purpose was to divide the *greater* portion of her estate among the charitable corporations named therein is evident. Her plan offended, but only in *part*, against the law of the State, and as to *such* part the legal result is the same as if she had not made any attempt to dispose of that part of her estate, for as to *that* she died intestate. And in so far as her intention to dispose of her estate failed for *want of power*, it would seem to be a necessary and logical result that the *character* of the estate undisposed of would be unaffected by her futile attempt at its disposition."

It follows, therefore, that the property not validly disposed of must pass pursuant to the provisions of section 87 of the Decedent Estate Law, and that since no child was born alive of the marriage between the decedent and Joseph Isler, he is not entitled to any estate by curtesy in this unconverted real property. (*Matter of Starbuck*, 63 Misc. 156; affd., 137 App. Div. 866; affd., 201 N. Y. 531.)

The claim of Henry Richmond against the estate in the sum of seventy-six dollars was duly proved and will be allowed, with costs.

Proceed accordingly.