In the Matter of the Petition of Louis Taylor to Render and Settle His Account as Executor of Camille F. Howells, Deceased.

Surrogate's Court, Kings County, January 20, 1933.

*Charles M. Sigefried,* for Teachers' Welfare Loan Fund.

*E. Ivan Rubenstein,* special guardian for Virginia P. Howells.

*James M. Baird,* for Caroline F. Adams.

*Patrick J. McDonald,* for Bessie M. Carey.

*Russell, Shevlin & Russell,* for the executor.

WINGATE, S. In its former opinion in this case (145 Misc. 557) this court determined that, aside from certain inconsequential bequests to two individuals, the entire will of this testatrix was unenforcible; the trust, attempted to be erected, by reason of its violation of section 11 of the Personal Property Law and section 42 of the Real Property Law, and the remainder, because it was a gift to an unincorporated association, the purposes of which had not been demonstrated to come within the provisions of section 12 of the Personal Property Law.

An adequate demonstration for such relief having been made, a further hearing was granted for the purpose of permitting the residuary legatee to introduce such evidence as might be possible for the purpose of showing that its objects were so purely charitable and benevolent as to bring it within the protection of the statute.

As proved to the satisfaction of the court, the residuary legatee is a voluntary association composed of teachers and former teachers in the public school system of this city. Its purpose, as stated in its rules and regulations, a printed copy of which has been introduced in evidence, is "to provide a fund from which retired teachers who have some incurable progressive disease may borrow with the understanding that the loan will be returned with interest from the reserve left to the teacher's estate under Option No. 1, or upon such terms, conditions and security as the board of trustees may determine."

For an adequate understanding of this professed purpose, reference must be made to section 1109-c of the Education Law, which regulates the method of payment of pensions and retirement allowances to the teachers of this State. The substantial effect of this section is that a retiring teacher may elect either to receive the total fund due him in periodic payments during life, or may choose

to receive similar payments in lesser sums with the remainder payable to his personal representatives or designee, or in certain other modes particularly specified in the statute.

It was testified at the hearing, and is in any case obvious from the terms of the statute, that a person who, on retiring, is suffering from an incurable progressive disease would act most improvidently were he to elect to accept the option which would terminate all rights on his death. The size and number of the payments contemplated under such plan would naturally be based upon the expectancy of life of the average member of the community. A person so afflicted on retirement would seldom, if ever, live out more than a minor fraction of such expectancy, with the result that the sum representing the difference between the payments which would be contemplated under a normal expectancy and those which would actually be made, up to the time of his premature death, would be lost to the individual and his estate.

The obvious solution for a person so situated is the adoption of the so-called " Option 1 " which permits the retiring individual to receive smaller periodic payments during life with any unpaid portion of the actuarial principal payable to his legal representatives " or to such person as he shall nominate by written designation duly acknowledged and filed with the retirement board."

It was demonstrated on the hearing, however, that in concrete instances where, as was the case with this decedent, the retiring teacher was possessed of negligible property aside from her retirement fund rights, the exercise of Option 1 imposed considerable hardship owing to the fact that by its election the size of the periodic payments was materially diminished. When, in addition, such a retiring teacher was afflicted with a progressive incurable disease, the natural increase in necessary expenses resulting therefrom produced real hardship upon the individual. Furthermore, since it was entirely within the power of the teacher who had so elected, by his own uncontrollable act to alter the designee who was to receive the portion of his retirement allowance payable after his death, the latter furnished no commercial collateral against which loans could be made to relieve financial distress during his closing days.

To meet this situation, certain of the teachers and public spirited citizens organized a voluntary association and made contributions to raise a fund from which loans could be made to retired teachers in such a plight, which association is the residuary legatee in this will.

It has been established that loans have in certain instances been made therefrom without any security whatsoever and that the

only " security " which has ever been taken is the entirely non-commercial and legally valueless one of a designation under Option 1, which in reality is no more than an obligation of honor of the borrower. Such loans are made both with and without an obligation on the part of the borrower to pay interest. Where interest is paid, it is used wholly for the defraying of necessary incidental expenses of administration of the fund, such as postage and stationery. No person connected with the association has ever derived one cent of profit therefrom and it is expressly stipulated in the rules of the association that its trustees shall serve without compensation. The loan, when repaid, is returned to principal and continues the revolving nature of the fund.

Under the facts thus disclosed, it is entirely obvious that a gift for such a purpose is for a charitable or benevolent use within the contemplation of section 12 of the Personal Property Law. (*Matter of Kelley*, 138 Misc. 190; *Matter of Patterson*, 139 id. 872, and cases cited.) Certainly the object envisaged of aiding retired teachers suffering from a progressive incurable disease is of an equally eleemosynary character with one " to assist poor needlewomen " which was upheld in *Manley* v. *Fiske* (139 App. Div. 665; affd., 201 N. Y. 546), even before the days of the broad liberalization of the subject accomplished in *Matter of Robinson* (203 N. Y. 380); *Matter of Cunningham* (206 id. 601); *Matter of Frasch* (245 id. 174), and *Matter of Durbrow* (Id. 469). The absence of express words of trust will not stand in the way of the effectuation of the wishes of the testatrix. (*Matter of Durbrow, supra; Matter of Patterson, supra; Matter of Winburn*, 139 Misc. 5.)

The final question in the case is capable of ready determination. At the time of decedent's death, on March 29, 1927, she left a husband her surviving. Under the provisions of section 17 of the Decedent Estate Law, as then existing, she was prohibited from bequeathing more than one-half of her estate for charitable purposes. It follows, therefore, that since, on the failure of the trusts erected by the will, its provisions violated this enactment, it must be determined that the gift for the benefit of the Teachers' Welfare Loan Fund became a general legacy of one-half of her net estate (*Matter of Brown*, 135 Misc. 611, 613; *Matter of Sloat*, 141 id. 710, 712), and that the balance of the estate, less the legacies to individuals and less all administration expenses, including attorneys' fees, passed as intestate property. (*Matter of Mosley*, 138 Misc. 847, 852; *Matter of Sloat*, 143 id. 170, 171.)

Proceed accordingly.