In the Matter of the Estate of RICHARD G. STABLEFORD, Deceased.

Surrogate's Court, Kings County, June 4, 1940.

*Sarah Stephenson*, for Sarah Stephenson and Viola N. Ker, as executrices, etc., petitioners.

*Frank J. McEwen*, for Charlotte W. Stableford, claimant, respondent.

WINGATE, S. The main issue in this proceeding is one which, so far as the diligence of counsel and the independent research

of the court has disclosed, has been passed upon in the courts of this State on one occasion only. It relates to the right of a widow to receive payments from the estate of her deceased husband pursuant to the terms of a separation agreement which did not expressly specify that they were to continue for her life.

The facts are undisputed. The decedent and the claimant separated in February, 1922. In the following October they entered into the agreement upon which the present claim is predicated. This provided that the wife should have the custody of the infant daughter of the parties, but specified in detail the rights of visitation of the father. It stipulated that neither should attempt to prejudice the mind of the child against the other, that the mother should not remove it beyond a certain distance from New York and should not incur any obligations which might become obligations of the husband, under penalty that he might deduct their amount from the allowance therein provided.

In this latter regard the agreement read: " The party of the first part does hereby agree that he will pay to the party of the second part the sum of Twenty-five Dollars ($25.00) by mailing a check therefor to her at %0 Miss Emmy G. Weidinger, 111 Highwood Avenue, Leonia, N. J., the address at which she resides, or to any other address which she may designate by written notice to the plaintiff, on Friday, the 13th of October, 1922, and every Friday thereafter, for her support and maintenance and for the support, maintenance and education of said infant daughter, . Charlotte V. Stableford, so long as she performs all the terms and conditions of this agreement on her part to be performed."

The final clause stipulates that the agreement shall become void if the parties become reconciled " or if their said marriage shall be dissolved at any time by the order of any court."

It is, of course, obvious that a very different question is raised in the present situation from that which is posed by an agreement providing for the continuance of the stipulated payments during the life of the payee. In such a case the contract is obviously enforcible according to its terms against the personal representatives of the deceased husband, and this has been the uniform decision. (*Barnes* v. *Klug,* 129 App. Div. 192, 195; *Matter of Fuller,* 151 Misc. 387, 388; affd., 242 App. Div. 623; *Matter of Hoffman,* 108 Misc. 612, 615; *Matter of Golding,* 127 id. 821, 823; *Matter of Herb,* 163 id. 441, 447.)

Whether or not such a result is attainable in the absence of express language of a similar nature, is obviously a question of the intention of the parties as indicated by the terms of the agreement when it is read as a whole. In *Matter of Junge* (125 Misc.

707, 709) the late Surrogate SCHULZ of Bronx county determined that no liability survived to the estate of the deceased husband under an agreement which specified that its terms should " govern their conduct towards each other so long as they shall continue to live separate and apart." The learned surrogate concluded that " This would seem to indicate that it was intended to operate only during the life of the one dying first, after which it was no longer possible for them to *live separate and apart*." (Italics in original.)

If this reasoning be accepted as sound, the same conclusion would seem to follow from the present wording which provides for the continuance of the payments " so long as she performs all the terms and conditions of this agreement on her part to be performed." These conditions, as noted, related to the rights of visitation of the child by the husband and to the refraining by the wife from the incurring of obligations which might become charges against the husband. It would, on the other hand, be equally arguable that since the only conditions expressly imposed on the continuance of the payments were that the wife should not interfere with his visitation and should not obligate him, these conditions had been rendered wholly nugatory by his death, since no act on her part can now breach either one.

The difficulty with this reasoning is that, as a logical matter, it proves too much, as it would be equally applicable on the death of the wife, since after her death she could obviously not perform any act within the definition of the conditions, with the literal result that the stipulated sums would be payable throughout eternity.

The avoidance of any such *reductio ad absurdum* is attainable only by reading implied conditions into the agreement. The first and most natural is that, since the payments were to be made for the support of the wife and the " infant daughter," they should cease when the wife died and the " infant daughter " was no longer within this description; in other words, when she became an adult. If, however, this implied term is deemed incorporated in the document, the result, on this phase of the question, becomes the equivalent of a stipulation that the payments are to be made so long as a legal obligation for support rests upon the husband. This obligation, however, terminates upon his death in any event in the absence of an express agreement on his part to the contrary. (*Wilson* v. *Hinman*, 182 N. Y. 408, 414.)

To the court there is, however, a more satisfactory solution of the problem than by these somewhat metaphysical ratiocinations. This is by approaching the subject from a consideration of the

general effect of a marital separation whether by way of judicial decree or by mutual agreement. The marital status carries with it certain rights and obligations which are inherent therein. These continue so long as the marriage endures unless expressly modified by one or the other method. (*People ex rel. Commissioners* v. *Cullen*, 153 N. Y. 629, 637; *Matter of Mosley*, 138 Misc. 847, 850; *Matter of Mackenzie*, 158 id. 543, 548–549.) It follows that the burden of demonstration is imposed upon any person asserting rights on his part or obligations on that of the other party to the union, which vary from those of the ordinary marriage, clearly to indicate that such change from the usual has come into effect.

On such an issue, as on any other in which the burden of persuasion rests on a given party, he must fail if, after a consideration of the entire record, the mind of the court is left in doubt. (*Matter of Case*, 214 N. Y. 199, 203; *Matter of Stern*, 235 App. Div. 60, 66; affd., 261 N. Y. 617; *Matter of Sharp*, 134 Misc. 405, 408; *Matter of Frommelt*, 154 id. 81, 82; *Matter of Lawson*, 158 id. 902, 904.)

In the present situation there is no clear indication as to whether the parties, in the agreement, contemplated that the obligation for payments should continue beyond the death of the husband. Were the court to hazard a guess, it would say that they probably gave no thought to the contingency at the time the document was signed, with the result that an affirmative agreement to this effect cannot be deemed to have been made. It is, however, unnecessary to go to this length. It is sufficient to determine that the widow has failed to show an affirmative agreement to that effect. (*Matter of Gilling*, 74 L. J. [Ch. Div. 1905] 335.) The objection of the widow to the failure of the executors to continue to make the payments subsequent to the death of the testator will, accordingly, be overruled.

A subsidiary question is presented respecting the right of the widow to quarantine under section 204 of the Real Property Law. The amount claimed by her totals $142.85 and is at the rate of $3.57 a day. In the opinion of the court the widow is entitled to an award of this variety under the facts of this case (*Matter of McClelland*, 134 Misc. 166, 167, and authorities cited), and the court deems the amount claimed to be reasonable. The fact that it slightly exceeds the sum which she was willing to accept under the separation agreement is immaterial. That agreement terminated on the death of the testator. The fact that through pressure of circumstances she may have been willing to enter into an unfavorable agreement during his life, has no bearing on her rights after his death.

Enter decree on notice in conformity herewith.