In the Matter of the Accounting of JEAN P. NICHOLS et al., as Executors of HERMAN A. NICHOLS, Deceased.

Surrogate's Court, New York County, August 10, 1951.

*Bleakley, Platt, Gilchrist & Walker* for executors, petitioners.

*Davies, Hardy, Schenck & Soons* for Lynette C. Nichols, respondent.

*Irving Kirschenbaum*, special guardian for Diana H. Nichols and others, infants, respondents.

*Hamilton McInnes* for State Tax Commission, respondent.

FRANKENTHALER, S. Objections addressed to the rejection of her demand for payment of the sum of $25,000 have been filed by the former wife of deceased in this proceeding for the settlement of the account of the executors. The objectant bases her claim upon the promise of her husband to bequeath that amount to her pursuant to an agreement of settlement of property rights entered into between the parties at a time when an action he had brought against her for a divorce was pending in a Florida court.

The facts have been stipulated. In 1940, the decedent and the claimant, then residing in New York, ceased living together and entered into an agreement in which it was provided in part that the wife would share in the income of a trust under the will of the husband's mother. In June, 1946, the husband commenced a suit in Florida for a divorce, alleging that property rights between the parties had been settled by the 1940 agreement and consenting to its incorporation in the decree. The wife appeared in the action, interposing a counterclaim for a divorce and demanding modification of the agreement so as to require her husband to make additional provision for her support.

On January 27, 1947, the parties and their attorneys entered into a stipulation in the Florida proceeding providing that the hearing before the Special Master be closed without further testimony, and that the Special Master forthwith make his recommendation and report to the court. On the same day, the parties entered into a separate stipulation which was not filed with the court or Special Master. By the terms of this second stipulation the wife consented that the property settlement agreement remain in full force and effect and that it should be confirmed,

ratified and approved in and by final decree, and she waived any right to seek its modification. In consideration of the said waiver, the decedent agreed to pay her $2,500, to pay her attorneys $500, to assign to her an additional share of his interest in his mother's estate and to bequeath the sum of $25,000 either to her or to their children, if she should predecease him.

On February 5, 1947, the parties executed an agreement in substantially the same form as the unfiled stipulation of January 27, 1947, but containing the additional provision that the will of the decedent would provide that the wife would be a creditor of his estate to the extent of $25,000 until that sum should be paid her. On February 13, 1947, the decedent executed a will bequeathing to the claimant the sum of $25,000. This will he later revoked by the will admitted to probate which contains no provision for the objectant.

On February 13, 1947, a final decree of divorce was granted the decedent. It provided, *inter alia,* that the agreement of separate maintenance and property settlement, dated August 7, 1940, be incorporated therein and be ratified, approved and confirmed; the terms of the agreement being " adopted in and by this decree as full, complete and final settlement of all alimony, separate maintenance, dower and property rights " between the decedent and the claimant. There was no reference to the agreement of February 5, 1947, in the decree nor in the Special Master's report on which it was based.

It is not denied that the testator's failure to make provision in his will for the payment of $25,000 to his former wife constituted a violation of the agreement of February 5, 1947. It is, however, argued not only that the Florida decree settling property rights is *res judicata* as to the present claim but also that the contract sued upon is unenforcible because of its alleged lack of consideration and because it tended to facilitate the procurement of a divorce. In none of these conclusions can the court concur.

It is well-settled law in this State that a separation agreement concerning property rights is not abrogated by a subsequent judgment for separation or divorce (*Flood* v. *Thiesing,* 273 App. Div. 548, affd. 298 N. Y. 700; *Goldman* v. *Goldman,* 282 N. Y. 296; *Galusha* v. *Galusha,* 116 N. Y. 635). Before such an agreement will be deemed merged in the decree, there must be a positive showing that such was the intention of the parties (*Murray* v. *Murray,* 278 App. Div. 183; see *Goldman* v. *Goldman, supra,* p. 305). That no intention to rescind their agreement of February 5, 1947, was entertained by the deceased and

the objectant, is clear from the fact that it was executed several days after the submission of the stipulation withdrawing the defendant's counterclaim. Although purporting to submit the question of property rights to the Florida court for disposition in accordance with the terms of the 1940 agreement, actually the parties intended to and did remove the 1947 agreement from the court's consideration. The fact that they did not submit the latter settlement to the court does not for that reason make it any the less effective under the rationale of the cases hereinbefore cited.

It has been suggested, however, that under Florida law the divorce decree is conclusive as to all property rights of the parties and that the 1947 agreement is consequently unenforcible. In support of this contention the executors rely upon section 65.15 of the Florida Statutes (Vol. 5) entitled '' Modification, alimony decrees, agreements, etc.'' This section, however, does no more than to provide a method, nowhere designated as exclusive (see *Hagen* v. *Viney,* 124 Fla. 747, 754–755), by which the parties may seek modification by the court of provisions for the wife's support. While the statute provides that once an order of modification is rendered, it fixes the only enforcible liability of the husband, this of course can have no relevance when no such order has been sought. Moreover, the Florida courts have indicated that enforcement will be granted to agreements which have been entered into in lieu of alimony in a subsequent divorce decree (see *McAllister* v. *McAllister,* 147 Fla. 647). Since the statute does not purport to deprive the parties to a matrimonial dispute of their right to adjust any differences without judicial intervention, this court will not sanction such an interpretation in the absence of controlling Florida authority.

In aid of their construction the executors cite *Finston* v. *Finston* (160 Fla. 935). This case merely held that matters considered by the court granting the divorce could not be subsequently relitigated; it nowhere dealt with the questions here presented. Similarly, *Schacht* v. *Schacht* (295 N. Y. 439) and *Calderon* v. *Calderon* (275 App. Div. 251), which held that a party who has submitted an agreement to the court granting the divorce cannot subsequently relitigate its legality, have no applicability.

The next defense relied upon by the executors is that the agreement is void for want of consideration. In light of the stipulated facts, this defense must fail. In reliance upon the decedent's promise to bequeath her the sum of $25,000, the objectant relinquished her right to seek modification of the 1940

agreement and withdrew her counterclaim for that relief and for a divorce. She has fulfilled the obligations she then assumed while the decedent has repudiated his. As she could have sought to modify the agreement under the Florida statute, it could hardly be said that the surrender of her right to do so did not constitute consideration. Consequently this defense to the claim is overruled. In reaching this conclusion the court has acted upon the transcript of the Florida proceeding offered in evidence and the motion of the objectant to strike out that record, on which decision was reserved, is denied.

There is left the question of whether the agreement on which the claim is based is void and unenforcible as against the public policy of this State as it is expressed in section 51 of the Domestic Relations Law providing that " a husband and wife cannot contract to alter or dissolve the marriage ". Agreements which fall within the ban of the doctrine are those which " promote ", " stimulate " or " facilitate " the procurement of a divorce (*Schley* v. *Andrews,* 225 N. Y. 110; *Gould* v. *Gould,* 261 App. Div. 733; *Matter of Rhinelander,* 290 N. Y. 31, 37). The attitude of the New York courts is summed up in the decision in the *Rhinelander* case by Judge DESMOND when he said (pp. 37–38) : " In pursuance of our settled policy to favor the continuance of the marriage relation, we have, however, consistently refused enforcement to a separation or support agreement shown to be part of a scheme *to obtain or facilitate a divorce,* as when the husband promises to pay alimony as a reward to his wife for getting a divorce, or when the money provisions for her support are a premium or award, inducement or advantage to the wife for procuring a divorce. (*Lake* v. *Lake,* 136 App. Div. 47; *Schley* v. *Andrews, supra.*) ' A bargain to obtain a divorce or the effect of which is to facilitate a divorce, is illegal.' (Restatement of the Law of Contracts, § 586.) Some of the New York cases have gone beyond the letter of the statute (Domestic Relations Law, § 51), which refers in terms only to a ' contract to alter or dissolve the marriage ' and have refused sanction to agreements which directly tended toward such a dissolution. But our progress in the direction of broadening the coverage of section 51 has gone no further than to apply that section, and its policy, to agreements which have a *direct* tendency toward dissolving marriages."

The Florida cases are in general accord (*Allen* v. *Allen,* 111 Fla. 733; *Gallemore* v. *Gallemore,* 94 Fla. 516).

The agreement in question added no impetus to the joint efforts of the parties to obtain a divorce. Each of them at the time the contract was negotiated had separately invoked the jurisdiction of the Florida court to grant that relief. Property settlements reached under such circumstances have never been held void under the doctrine (cf. *Matter of Rhinelander, supra*) and no reason presents itself why a more stringent test should be employed in this case. By no stretch of the imagination could the objectant's withdrawal of her counterclaim be regarded as " a part of a scheme," in the words of Judge DESMOND, " having a direct tendency toward dissolving marriage." (See, also, *Abeles* v. *Abeles,* 197 Misc. 913.)

As the court holds that none of the defenses asserted by the executors is valid, the objections of the claimant are sustained and her claim allowed in the sum of $25,000, with interest at the rate of 6% payable commencing seven months after the issuance of letters testamentary, at which time the objectant as a creditor of the estate became entitled to payment under the agreement. The recommendations of the special guardian are noted and denied.

Submit, on notice, affidavit of services rendered in support of application for allowance to counsel under section 285 of the Surrogate's Court Act.

Submit decree on notice.