PATIENCE M. COOKE, Plaintiff, *v.* CORA T. COOKE, as Executrix of GORDON C. COOKE, Deceased, Defendant.

Supreme Court, Special Term, Westchester County, July 26, 1955.

*George Dines* for plaintiff.

*Allan R. Campbell* for defendant.

EAGER, J. This action, tried before the undersigned without a jury, is one at law by a first wife of a decedent against his executrix to recover certain alimony or support installments, payable monthly, and alleged to be owing and to have accrued for a period subsequent to his death. The alleged basis of the liability of the estate of the decedent are the provisions of a separation agreement entered into between the parties on June 13, 1952, and the provisions of a Florida decree of divorce obtained by the decedent against the plaintiff. This decree confirmed the agreement and ordered the parties to carry out the provisions thereof.

The question involved is whether or not the provisions of the agreement and of the decree are such as to call for a continuance of the payment to the plaintiff of the alimony or support installments following the death of the decedent.

It is clear that a husband, in connection with a valid separation agreement, may obligate himself and his estate to make installment payments for the support of his wife as long as she lives, and that such an obligation is binding upon and enforcible against his estate where his wife survives him. (*Wilson*

v. *Hinman,* 182 N. Y. 408, 414; *Lepsch* v. *Lepsch,* 275 App. Div. 412; *Matter of Grimley,* 200 Misc. 901, 902; Notes, 100 A. L. R. 500, 147 A. L. R. 708.) The contractual obligation survives a subsequent divorce of the parties where they so agree. (*Lepsch* v. *Lepsch, supra; Babcock* v. *Babcock,* 147 Misc. 900, affd. 239 App. Div. 884, appeal dismissed 263 N. Y. 665; *Bank of America Nat. Trust & Sav. Assn.* v. *Bankers Tr. Co.,* N. Y. L. J., Feb. 24, 1955, p. 8, col. 5; Notes, 147 A. L. R. 708, 39 A. L. R. 2d 1406.) Whether or not the obligation to continue the payment of periodic alimony or support payments is to survive the death of the husband depends upon the intent of the parties. (See decisions *supra.*) But it is clear that the agreement itself, or, if it be ambiguous, the terms thereof when viewed in the light of surrounding circumstances, must unequivocally speak out for the continuance of the periodic payments following the death of the husband, or the parties will not be held to have so intended. (*Matter of Porter,* 208 Misc. 611.)

The plaintiff here, in support of her claim, relies particularly upon the provision in the agreement that the " Party of the first part (husband) shall pay or cause to be paid to the party of the second part, during her lifetime, the sum of Four Hundred and Seventy-five ($475.00) Dollars per month, payable on the 5th day of each and every month, in advance, commencing January 5, 1953 ", pointing specifically to the words " during her lifetime ". And her counsel take the position, according to their brief and reply brief that the " agreement is clear and distinct and there is no ambiguity to be found therein ", and that there is clear provision for continuance of the monthly installments to the plaintiff following the death of her former husband. In fact, the complaint is framed on this theory, namely, that, by virtue of the provisions of the agreement itself, without the need of consideration of extrinsic evidence, the plaintiff is entitled to recover the monthly installments claimed to have accrued after death. Upon the opening of the trial, the defendant moved to dismiss the complaint for insufficiency and decision was reserved. The plaintiff thereupon, as her case, duly proved the making and delivery of the separation agreement which was offered and received in evidence; the due rendition of the Florida decree of divorce in favor of the husband, an exemplified copy of which decree was duly offered and received in evidence; and the nonpayment of monthly installments alleged to be owing from date of death up to the time of the trial, amounting to the sum of $4,250. Thereupon the plaintiff rested and a motion to dismiss was made upon the

ground that the plaintiff had not established a cause of action. Decision was reserved.

In view of the foregoing, we must, at least, in the first instance, look solely to the provisions of the separation agreement and of the Florida decree for the determination of the question before the court. Of course, it is clear that the construction and effect of the agreement is to be determined upon the reading of the entire agreement. This is in accordance with general principles, it being held that, " A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract. * * * ' That interpretation is favored which will make every part of a contract effective.' " (*Rentways, Inc.,* v. *O'Neill Milk & Cream Co.,* 308 N. Y. 342, 347.) Furthermore, it has been directly held that " If a separation agreement contains no specific provision as to survival of benefits, it must be read as a whole to determine whether it was the intention of the parties that such agreement survive the husband's death, and the burden of proving such intent is on the wife." (*Lepsch* v. *Lepsch,* 275 App. Div. 412, 415, *supra.* See, also, *Matter of Stableford,* 174 Misc. 284.) And the mere statement in such an agreement that the periodic payments shall be made for the life of the wife does not in and of itself amount to a " specific provision " or an unequivocal speaking that the payments are to continue after the death of the husband if the wife survives him. (See *Matter of Porter,* 208 Misc. 611, *supra.*) Therefore, it is proper that we look to the other provisions of the agreement to ascertain the intent of the parties.

In construing and determining the effect of the particular agreement before the court, the avowed purpose thereof as stated therein is of supreme importance. Such purpose is indicative of what the parties had in mind. In this connection, the parties did expressly declare that they did thereby " desire to agree upon arrangement for the support and maintenance of party of the second part, (wife), during the period of separation of the parties, and to adjust their property rights and the right of party of the second part to alimony, if any, without the necessity of litigating the same, should a divorce be granted to either party." In fact, such is the usual purpose of a separation agreement where the parties contemplate a divorce, namely, to adjust their property rights and to fix the amount of " alimony " in the event a decree of divorce is obtained by

one or the other. And in this connection it is clear that the alimony so fixed is generally understood to be a periodic payment to continue solely during the life of the husband. (See, for instance, *Wilson* v. *Hinman,* 182 N. Y. 408; *Johns* v. *Johns,* 44 App. Div. 533, affd., on opinion below, 166 N. Y. 613. Also, Notes, 18 A. L. R. 1040.) For instance, in *Wilson* v. *Hinman* (*supra*), CULLEN, Chief Judge, stating that the decisions seemed to recognize that the foundation for an award of alimony rested in the marital obligation of the husband's support, further said (p. 412): " If this view of the nature of alimony be correct, then it seems clear on principle that the obligation to pay it ceases at the death of the husband. A wife's right of support does not survive her husband's life as a claim against his estate. \* \* \* Moreover, there is this practical objection to considering the decree for alimony as surviving the demise of the husband. In this country, at least till very recent times, the class of persons whose incomes are derived solely from accumulated wealth is comparatively small. The income of most men is derived from their professional or business exertions and the award of alimony is usually based on such an income, not on one accruing from accumulated property. An allowance of an amount, which it would be entirely just that a man should pay during his life to the wife whom his misconduct has compelled to seek a divorce, might be grossly extravagant if imposed as a charge upon his estate after his death and very unjust to other claimants on his property."

There is a further provision in the agreement here which is very pertinent and is indicative that the parties were providing for the payment of alimony dependent upon income of the husband, to wit, a provision in effect limiting the total of monthly payments in any one year to 50% of the net income of the husband where he earns less than $10,000 in such year. As I read this provision, it indicates that the parties contemplated that the husband would be earning $10,000 or more a year. If, however, his income should be less than such sum, then the wife was only to receive 50% thereof. In fact, if for any reason, all of his income should stop during his lifetime, then, under the express terms of the agreement, the monthly payments would stop. Thus, it was not contemplated that the monthly payments to the wife should be made out of principal. Consequently, when he died and his income stopped, it is natural to assume that the parties also intended that the " alimony " should stop. As reasoned by the learned Surrogate in *Matter of Porter* (208 Misc. 611, *supra*), it would not, under the circumstances,

be proper that the plaintiff here have the right on the death of the husband to arbitrarily select the ceiling amount of $475 designated in the agreement as the amount to be paid to her on the death of the husband.

Under the circumstances, the words " during her lifetime " are construed as words of limitation applicable in case the plaintiff should die before the husband, and do not have the effect of extending the alimony payments beyond the lifetime of the husband. (See *Matter of Porter, supra.*) And the further provision — a closing clause — that the husband " binds himself, his heirs, executors, administrators and assigns " to the performance of the agreement is not deemed indicative of an intent that the alimony provisions of the agreement were to survive his death. The agreement provides for a full satisfaction of any and all claims which the parties may have against each other with reference to their respective properties and also for the execution by the husband of instruments for the conveyance of the residence property and furnishings to the plaintiff; and these provisions would properly call for the clause in question as they would necessarily be binding upon the successors and representatives of the husband upon his death.

Finally, it is significant that the parties did expressly agree that the provisions of the agreement were to be incorporated in the decree to be rendered divorcing the parties. The agreement was annexed to and made a part of the decree, and it was therein provided that the agreement " is hereby ratified, adopted and confirmed in all respects and the parties hereto are ordered to perform the agreements therein contained." Consequently, what the plaintiff intended to obtain and did obtain was a provision by court decree for the making of the monthly payments during her lifetime, and it is well settled that such provision by decree of divorce or separation, though stated to be for the life of the wife, ends on the death of the husband. (See *Wilson* v. *Hinman, supra,* and *Johns* v. *Johns, supra.*)

The motion to dismiss the complaint at the opening of the case for insufficiency is granted. If I were not granting such motion, I would grant the motion made at the close of the plaintiff's case. Furthermore, I would dismiss the complaint on the close of the entire case and direct judgment for defendant. The evidence of extrinsic circumstances received as part of defendant's case in my opinion confirms the construction of the agreement contended for by the defendant. In construing an ambiguous agreement, " A court will endeavor to give the

construction most equitable to both parties'' (*Fleischman* v. *Furgueson,* 223 N. Y. 235, 241), that is, of course, if consistent with the express terms thereof. In view of the terms of the duly probated will of the decedent leaving a substantial portion of his estate to plaintiff and the nature and extent of his estate, it would seem inequitable to bind his estate to make the monthly payments to plaintiff as long as she should live. In fact, it would appear that, under the particular circumstances here, the imposing of such an obligation upon his estate would defeat the terms of his will.

It should be noted that I have not overlooked the fact that it is apparent that the separation agreement was drawn and delivered in the State of New Jersey, but there is no contention made that the law of such State is any different than the law of our State.

Submit judgment on notice.