Mary E. CATRON, Respondent,

v.

Reva Geraldine CATRON, Executrix of the Estate of Damon V. Catron, Deceased, Appellant.

No. 25694.

Missouri Court of Appeals, Kansas City District.

March 5, 1973.

———◆———

William D. Powell, Columbia, for appellant; Porter & Cleaveland, Columbia, of counsel.

Larry M. Woods, Columbia, for respondent; Sapp, Woods, Dannov & Orr, Columbia, and Roscoe S. Jones, Atlantic, Iowa, of counsel.

Before SHANGLER, C. J., and PRITCHARD, DIXON, SWOFFORD and WASSERSTROM, JJ.

PRITCHARD, Judge.

Upon disqualification of the probate judge and certification of the proceedings to the circuit court, respondent was successful in recovering on her claim against her ex-husband's estate upon a separation agreement providing "for her support and maintenance $400.00 monthly until the death or remarriage of said Wife, whichever shall first occur."

The main issue is the validity of the agreement to require the payment to respondent of the stipulated support and maintenance beyond deceased's death. Certain other contentions of appellant relate to the admissibility of documentary evidence received by the court, and these will be first considered.

■■■■ Appellant says the "AGREEMENT", Exhibit 1, was improperly admitted because its execution was not proved. The document contains on its last page and below and to the left of signatures of the parties this matter: "APPROVED; Marion Hirschburg, Attorney for Husband [and] Roscoe S. Jones, Attorney for Wife." Appellant claims that these persons are "attesting" witnesses who, if available, must be called to prove up the writing, submitting that Exhibit 1 "must be considered as an attested private writing." It is doubtful that these two attorneys who signed the document following the typed-in word "Approved" are in fact attesting witnesses who would have to be called as witnesses to prove up the document under some of the cases and authority cited by appellant: Chaplain v. Briscoe, 19 Miss. 372, 382; and 32 C.J.S. Evidence § 739, p. 1074. The word "attest" is not used, and it is a valid conclusion that the opposing counsel were merely approving the settlement of the property rights of the parties in connection with pending and contested divorce proceedings. "To 'approve' or give 'approval' is in its essential and most obvious meaning to confirm, ratify, sanction, or consent to some act or thing done by another." State ex rel. City of St. Louis v. Caulfield et al., 333 Mo. 270, 62 S.W.2d 818, 823. See also 3A Words and Phrases, "Approval", "Approve", "Approved", pp. 500, 506, 512. But even if the two attorneys be considered as "attesting witnesses" the old rule requiring that a subscribing witness must be called to prove the execution of an instrument, as required in Glasgow v. Ridgeley & Allen,

11 Mo. 34, 39, was later relaxed in Bowling et al. v. Hax et al., 55 Mo. 446, 448, because the parties had since (Glasgow) been made competent witnesses. It is now sufficient that the execution of an instrument in writing be established by the testimony of some person familiar with the handwriting of the parties, 32 C.J.S. Evidence §§ 740, 741, pp. 1079, 1080, at least where there is no requirement of proof by subscribing witnesses as in instruments affecting real estate. Cf. Sections 442.260–442.300, RSMo 1969, V.A.M.S. Here, the son of Damon V. and Mary E. Catron, Damon Dwayne Catron, testified that he was acquainted with his parents' signatures, and those on Exhibit 1 were unequivocally theirs. Like identifications by Dewey Kuiken, a banker who did business with the Catrons, and by Mr. and Mrs. Conwell Johnson, longtime friends of the parties, were made. It is obvious that there is no merit in appellant's contention that the execution of Exhibit 1 was not sufficiently proved.

■ Exhibit 2 is a copy of the divorce decree of respondent and Damon V. Catron, granted March 30, 1965, in the District Court of Cass County, Iowa. Attached to it is the duly executed certificate of the clerk of the court, and a judge thereof, who is in turn certified to be a duly commissioned and sworn judge by the clerk. The certification is in accordance with 28 U.S.C.A., Sec. 1738, and the same is admissible under Sec. 490.130, RSMo 1969, V.A.M.S. There was no noncompliance with these federal and state statutes as appellant claims, and the objection to the document being admitted into evidence was properly overruled.

It is probably true, as appellant states, that the law of Iowa controls as to the validity or invalidity of the separation and property settlement agreement inasmuch as it unquestionably appears that the parties were residents of Iowa when the causes for the agreement arose, respondent was and still is a resident of Iowa, and the agreement was to be partly performed in that state. Kavanaugh v. Supreme Council of Royal League, 158 Mo.App. 234, 138 S.W. 359, 362. At least it would appear that the place of the most significant contact of the subject matter of the agreement would be the state of Iowa. 16 Am.Jur.2d, Conflict of Laws, Sections 38 and 39, pp. 56, et seq. It is, however, of no real importance whether the law of Iowa or the law of Missouri, where deceased resided at the time of his death, be applied as to the two remaining points. As will be demonstrated, the applicable law of the two states is practically identical on these issues.

Appellant says that the agreement, Exhibit 1, is void as against the public policy because it is promotive of divorce. The agreement, dated January 12, 1965, first recites that the parties, the wife of Atlantic, Iowa, and the husband of Clarksville, Maryland, had been married for 26 years; there were no children under the age of majority; the parties were separated and living apart since October 20, 1964; and had no expectation of resuming marital relations. It is further recited that the wife had filed in the District Court of Cass County, Iowa, a still pending petition for divorce, and the parties were desirous of settling their property rights and the wife's right to maintenance and support without resort to public adversary proceedings.

Paragraph I of the agreement, concerning its effective date, provides that if an absolute decree of divorce is granted the wife, the agreement shall be binding on the parties but if no decree is granted the wife, the agreement shall be null and void. Notwithstanding the matter of entry of a divorce decree, the husband agreed to pay temporary support and maintenance payments for the months of January, February and March, 1965, but not thereafter, and the temporary payments should cease if a decree of divorce was entered prior to the end of the three month period.

Paragraph III of the agreement provides for the division of the property of the parties. Paragraphs IV, V and VI provide

for future waiver of the respective rights of the parties in each other's property, "provided, however, that the Husband, at all times retains in his possession property sufficient to reasonably satisfy the obligations imposed upon him under the terms of this agreement." Paragraph VII, which is in issue under Point IV of appellant's brief, provides that "The Husband shall, upon the granting of a decree of divorce, pay the Wife for her support and maintenance $400.00 monthly until the death or remarriage of said Wife, whichever shall first occur." All payments were to be made to the wife at 1825 Bryn Mawr Circle, Atlantic, Iowa (which was real property set over to the wife). Paragraph VIII provides for waiver of or release from the obligation for alimony, support, maintenance, attorney fees, or court costs, arising out of the marital relationship of the parties. The husband agreed, by Paragraph IX, to maintain an existing $5,000.00 insurance policy on his life, payable to the wife on his death, and should he fail to do so his estate would be liable to her if she survived him.

Paragraph X of the agreement provides that "The Husband will pay to Jones, Cambridge, Carl, and Howard, Wife's counsel, the sum of $1,500.00 attorney fees, payment to be made at time of entry of final divorce decree", and all court costs of the pending divorce action. One other relevant provision of the agreement is Paragraph XIII, "CONSTRUCTION This agreement is not intended, nor shall it be construed, to be an agreement for divorce or separate maintenance."

■ Arguing the point of voidness, appellant first says that Paragraph I of the agreement conditions its legal effect upon respondent's procuring a divorce, which is an express indication of the sole purpose of the agreement, "that being a private policy of insurance to guarantee and encourage the procurement of the divorce." Read fairly and as a whole, the agreement is not conditioned upon the procurement of a divorce. Rather, it is a document setting the property rights and providing for what might be a legal duty of the husband to support the wife in contemplation of a divorce, or in the event of an absolute divorce between these separated spouses who had no expectation of resuming marital relations as recited in the agreement. In Iowa, it has been long held that "The parties may stipulate as to their property rights *in case* a divorce is granted, if fair and in good faith and reasonable. Slattery v. Slattery, 139 Iowa 419, 422, 116 N.W. 608." (Emphasis added.) Chambers v. Porter, Iowa, 183 N.W. 431, 433[3]. In Gould v. Gunn, 161 Iowa 155, 140 N.W. 380, in May of 1900, before a decree of divorce was granted on or about June 2, 1900, the parties entered into a contract for the division of their property: "In case a suit for divorce shall be brought by either party and a divorce is decreed by the court, it is stipulated between said parties that the decree shall award all the property, real and personal, now belonging to and held by the said parties, jointly or separately, to * * *." (Mrs. Gould and the children jointly with right of survivorship.) Certain inventions or patents were reserved in the contract to the husband, and it was held that the inventions or patents were not included in the personal property awarded to the children. The court remarked, loc. cit. 140 N.W. 383[3, 4]: "[W]e think that both the contract and the decree may be relied upon by plaintiffs * * *." And although Section 598.14, Code of Iowa, provides, "Alimony—custody of children—changes. When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. [and] Subsequent changes may be made by it in these respects when circumstances render them expedient", there are at least two cases which recognize agreements settling property rights made before divorce decrees were entered. One of these is Knipfer v. Knipfer, 259 Iowa 347, 144 N.W.2d 140, 144, 145, saying, "Except as the rule may be altered by statute, as a general

rule, a judgment providing for *or approving and adopting an adjustment of property rights* as between the parties to a divorce proceeding, * * * cannot be modified or vacated after it has become final, in the absence of fraud, coercion, or other grounds * * *." [Emphasis added.] Another is Wells v. Wells, Iowa, 168 N.W.2d 54, 62, it was that a pre-divorce stipulation as to settlement allowances, which was incorporated into the decree, could not be modified, "Absent any claim of fraud or irregularity." Missouri is in accord with the Iowa view that a property settlement agreement in contemplation of divorce is valid. See Smith v. Smith, Mo. App., 429 S.W.2d 771, 774[8–12]; Singer v. Singer, Mo.App., 390 S.W.2d 605, 608[1, 2]; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 584[1, 2]; and Dorsett v. Dorsett, 232 Mo.App. 126, 90 S.W.2d 188, 194[1]. The two cases cited by appellant in support of her contention of invalidity are distinguishable. One involved a contract between a spouse and an attorney for fees to obtain divorces and for property settlements: In re Sylvester's Estate, 195 Iowa 1329, 192 N.W. 442, wherein the administration was successful in securing repayment of attorney's fees paid by the decedent under the declared void contract. The other, Barngrover et al. v. Pettigrew, 128 Iowa 533, 104 N.W. 904, involved a contract between a husband and a detective to furnish proof of the wife's infidelity when she was about to sue for divorce. The object in both the cited cases was to bring about a dissolution of marital obligations, not merely to settle property rights in case a divorce was granted which is the normal situation where *only the husband and wife* are parties to the agreement. Another distinguishing factor is that here the divorce suit was pending when the contract was made, said to be important in In re Nichols' Estate, 201 Misc. 922, 107 N.Y.S.2d 311. Here the agreement was not to procure the dissolution of the marriage, but only to settle the property rights of the parties and to provide for the wife in the event of divorce, and under such circumstances the agreement is not void (the matter of counsel fees for the *pending* divorce, which very well could have been a controverted matter as to the amount thereof and the husband's obligation to pay them, is likewise not void), as being against public policy as contended by appellant. Point III(a) is overruled.

Appellant's last point is that the court erred in construing Exhibit 1 so as to provide support and maintenance payments to respondent to continue after decedent's death. She concedes "that a separation agreement, which when fairly construed as a whole unquestionably provides for a continuation of alimony payments to the wife after the husband's death, constitutes a valid contract binding on the husband's estate." Yet appellant argues "that respondent wholly failed to satisfy the burden of showing an 'unequivocal' intent that the subject payments continue after decedent's death." Apparently the argument proceeds on the premise that Paragraph VII of Exhibit 1, providing for monthly support and maintenance to respondent until her death or remarriage, whichever shall occur first, is not in itself free of ambiguities; and that all of the remaining provisions of Exhibit 1 strongly suggest that the separation agreement would not obligate decedent's estate to continue the support payments after his death.

The parties are not in disagreement that the law of both Iowa and Missouri is to the effect that *alimony* payments will ordinarily not extend beyond the time of the death of the former spouse. In re Yoss' Estate, 237 Iowa 1092, 24 N.W.2d 399, 400; Chappell v. Nash, Mo.App., 399 S.W.2d 253. It is undoubtedly true, also, that appellant's cited cases and quotes therefrom are correct: "The agreement itself, or if it be ambiguous, the [language] thereof viewed in the light of surrounding circumstances, must unequivocally speak out for the continuance of the periodic payments following the death of the husband, or the parties will not be held to so have intended." Cooke v. Cooke, 208 Misc. 591, 144

N.Y.S.2d 386, 388[1–4] (Aff'd 2 A.D.2d 128, 154 N.Y.S.2d 757; App. den. 2 A.D.2d 810, 154 N.Y.S.2d 844): "The evidence must be so clear as to leave no doubt in the mind of the court as to the obligor's intention to bind his estate for continued payments after his death." Desjardins v. Desjardins (D.C.E.D.Ky.), 193 F.Supp. 210, 214; and "The intent of any document, however, may not be determined by an isolated statement culled from it, particularly where, as here, the agreement contains other qualifying provisions which cast serious doubt upon the meaning of the isolated statement, and where, as here, the surrounding circumstances point to a contrary meaning." Cooke v. Cooke, 154 N.Y.S.2d 757, 763.

In the cited case of In re Yoss' Estate, supra, the plaintiff, divorced wife, and decedent entered into a written agreement "which settled 'all their property rights' in case a divorce should be granted." A farm and personal property were to be the husband's; the household goods were to be divided between them, and the costs of the divorce were to be paid one-half by each party, and upon divorce decree, the husband was to pay for the benefit of the wife $1.00 per day "during the life of the wife." The stipulation was incorporated into the decree. The court noted, loc. cit. 24 N.W. 2d 400[2], "Almost without exception however, the authorities hold that parties to a divorce suit have the right to agree that periodic payments to the wife shall continue after the husband's death or for the lifetime of the wife and where such agreement is approved by the court it is valid and enforceable against the husband's estate. (Citing authorities.) Especially is this so where the agreement provides for the settlement of all property rights between the parties." The Yoss court affirmed the judgment for the divorced wife.

In the case of In re Roberts' Estate, 257 Iowa 1, 131 N.W.2d 458, the court was dealing with a decree settling property rights without any previous stipulation with respect thereto. The court held that the award that the husband pay the wife " 'One Hundred Dollars ($100.00) a month *to continue* during the lifetime of the plaintiff and while she remains unmarried' " were clear and unambiguous words, and "cannot be read out of this decree, for it was within the court's power to grant such relief in addition to a fair property division. It must be presumed the court knew that without the use of these words the payments would cease upon the death of either party under the general rule clearly announced in our Yoss, Mullen, and Carrell cases, supra." [In re Estate of Yoss, 237 Iowa 1092, 24 N.W.2d 399, 400; Mullen v. Mullen, 246 Iowa 1255, 69 N.W. 2d 420, 423; and Carrell v. Carrell, 250 Iowa 983, 96 N.W.2d 315.] See also Farrington v. Boston Safe Deposit & Trust Co., 280 Mass. 121, 181 N.E. 779 (cited in Roberts), and Stratton v. Stratton, 77 Me. 373, 52 Am.Rep. 779 (cited and quoted in Farrington, " 'Moreover, where the language of the decree expressly states that it is to continue after the death of the husband, the authorities hold that it will so continue.' ") Consult also 24 Am.Jur.2d Divorce and Separation, Sec. 911, p. 1035; Annotations, 18 A.L.R. 1055; 39 A.L.R.2d 1406; and 75 A.L.R.2d 1086.

In Missouri, North v. North, 339 Mo. 1226, 100 S.W.2d 582, is the landmark case on the proposition that a contract between a husband and wife in contemplation of divorce and which extends the payment of monthly support to the wife in lieu of dower and *statutory* alimony "until her death or remarriage is valid." The court there held that a court has no right in a divorce action to disregard the spouses' contract settling their property rights, including dower, alimony, and support, in case of separation, if free from fraud, collusion, or compulsion, and if fair to the wife. Loc. cit. 100 S.W.2d 587[10]. See also the case of Dickey v. Dickey, 154 Md. 675, 141 A. 387, 388, cited in North.

In both the North case and the Roberts case, the court held that provision for payment to the wife until her death or remar-

riage, similar to that here, were plain, clear and unambiguous. Undoubtedly, the judgment for respondent could be affirmed on that basis alone. Appellant has, however, cited cases and authority which indicate that the agreement as a whole should be considered to ascertain if there is anything therein which is inconsistent with the plain terms of the particular provision for monthly payments beyond decedent's death. Cooke v. Cooke, supra, 154 N.Y.S.2d 763[6]; Anno. 75 A.L.R.2d 1085, 1100.

Relying upon Cooke v. Cooke, supra, and Desjardins v. Desjardins (D.C.E.D.Ky.), 193 F.Supp. 210, affirmed by opinion, 6 Cir., 308 F.2d 111, appellant urges that the provision of Paragraph IX of the agreement requiring decedent to maintain a $5,000.00 life insurance policy on his life payable to respondent shows an intent that it provide for her support after his death "at which time they expected and intended that the payments pursuant to Paragraph VII would cease." There is nothing to show that the "Insurance for Wife" provision is not cumulative to other provisions for her or that it is in lieu of support payments.

Appellant relies upon Paragraph V(b) of the agreement as showing that it was the parties' intention that support payments would cease upon death. She quotes: "Each party shall be free to dispose, by will, of any property he or she may possess at the time of his or her death." The quote and the conclusion sought to be derived therefrom ignores the further provisions of waiver of rights of inheritance of the parties in the estates of each other, "except such rights saved or created by the terms of this agreement." (Italics added.) A similar provision is found in Paragraph VIII of the agreement, "Each party, except with respect to obligations imposed herein, releases the other party, and his or her respective legal representatives, successors and assigns, from any claim of any kind, and specifically relinquishes any right, title or interest in or to any earnings, accumulations, future investments,

money or property of the other party." (Italics added.) These italicized words rather than detracting from the plain words "until the death or remarriage of said wife" reinforce them as to an intention to continue support payments beyond the husband's death. And thus is distinguished appellant's cited case of Billow v. Billow, 97 Ohio App. 277, 125 N.E.2d 558, 562, where words giving each party the liberty to dispose of his property by will were set forth. The court remarked as to words of the provision, "This does not say 'except as such estate may be encumbered by the support payments.'" Thus here, although the agreement establishes the rights of the parties *during their lifetimes* to deal with and dispose of their properties, and to dispose of their properties *after their lifetimes,* such rights are conditioned and limited by the husband's express obligation to retain sufficient assets in his estate to satisfy his *contractual* obligation to the wife.

The probate court inventory here shows some 1,447 shares of the corporate stock of the W. R. Grace Company were included in decedent's estate. This stock was then apparently worth $54,443.38. The inference is that decedent recognized his obligation to provide by sufficient assets in his estate for continued support payments to respondent.

Even considering the agreement as a whole, it must be concluded that there is nothing therein which would qualify or limit the plain and unambiguous provision of Paragraph VII granting to respondent for her support and maintenance $400.00 monthly until her death or remarriage, whichever shall first occur. In re Yoss' Estate; In re Roberts' Estate; North v. North; all supra, and other authorities should be followed. Appellant's Point III(b) is ruled against her.

The court gave judgment to respondent for a total of $15,200.00 support and maintenance payments from the date of decedent's death, November 4, 1967, to the date of judgment, December 22, 1970, a total of

$15,200.00. It found that the claim for further support and maintenance was contingent within the meaning of Sec. 473.390, RSMo 1969, V.A.M.S., and remanded the case to the Probate Court of Boone County, Missouri, for further proceedings under that statute. There is no contention that this procedure is incorrect.

The judgment is affirmed and the case is remanded for further proceedings as directed by the trial court's order.

All concur.

CROSS, J., not participating.